STATE OF NORTH CAROLINA v. LANCE DYLAN FLINT

No. COA08-1235

(Filed 15 September 2009)

**1. Criminal Law— denial of continuance—discovery not
requested**

The trial court did not abuse its discretion in a prosecution
for robbery and other charges by denying defendant's motion to
continue based on not having received discovery within a rea-

sonable time before trial. Defendant did not move that the State make discovery available, and there was nothing in the record showing that additional time was necessary.

**2. Witnesses— name misstated on witness list—allowed to testify**

The trial court did not abuse its discretion by allowing Karen Holman to testify when her name had been misstated as "Karen Holbrook" on the witness list provided by the State. The record does not reveal any defense motion or written agreement for the State to provide a witness list; moreover, this witness's testimony was purely to authenticate documents and tapes.

**3. Criminal Law— acceptance of guilty plea and habitual felon acknowledgment**

The trial court had jurisdiction to accept a plea from defendant as to all of his pending charges and to his status as an habitual felon where the habitual felon law was, at the least, ancillary to the multiple felony indictments.

**4. Criminal Law— guilty pleas and habitual felon acknowledgment—informed choice**

The trial court did not err by accepting defendant's guilty pleas and admission to habitual felon status where defendant argued that his plea was not the product of his informed choice. The trial court complied with N.C.G.S. § 15A-1022(a) in determining that defendant's pleas were voluntarily given and a product of informed choice, and defendant's answers did not indicate any misunderstanding.

**5. Criminal Law— arraignment—less than all charges—not prejudicial**

There was no prejudicial error in not arraigning defendant on all charges contained in the plea where defendant did not object and did not claim that he was not properly informed of the charges.

**6. Criminal Law— guilty pleas—factual basis—insufficient**

There was an insufficient factual basis for guilty pleas to multiple felonies and an admission to having obtained habitual felon status. The record indicates that the trial court relied solely on a document presented by the State which did not address all of the charges.

STATE v. FLINT

[199 N.C. App. 709 (2009)]

**7. Sentencing— prior record level—erroneous—stipulation**

The trial court erred by sentencing defendant at a prior record level VI when he should have been sentenced at a prior record level V. While defendant's stipulation as to prior record level is sufficient evidence for sentencing, the trial court's assignment of a record level is a conclusion of law reviewed *de novo*.

Judge JACKSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 9 November 2007 by Judge D. Jack Hooks, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 5 May 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Philip A. Telfer, for the State.*

*Charlotte Gail Blake for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Lance Dylan Flint ("defendant") appeals from a judgment entered after a jury convicted defendant and following a subsequent plea agreement in which he pled guilty to sixty-eight felonies and four misdemeanors. Defendant's appeal is founded on five issues, including denial of a motion to continue; allowing testimony by an unlisted witness; proceeding to a trial on habitual felon status following his convictions; accepting his guilty plea without a proper evidentiary foundation and improper sentencing. For the reasons discussed herein, we find no error in defendant's trial and convictions; however, we vacate the judgment, set aside defendant's plea agreement, and remand for proceedings consistent with this opinion.

I. Background

Prior to 14 November 2005 defendant had over one hundred prior convictions, which included both felonies and misdemeanors. From 14 November 2005 to 22 May 2006, defendant was indicted for eighty-two felonies and eight misdemeanors, which occurred between 13 May 2005 and 10 April 2006 in New Hanover County. These indictments included charges for common law robbery, breaking and entering a motor vehicle, breaking and entering into a building, financial card fraud, obtaining property by false pretenses, forgery of instruments, uttering forged instruments, possession of stolen goods/property, financial identity fraud, misdemeanor larceny, felony larceny,

injury to personal property and eluding arrest. Defendant was also indicted for being an habitual felon on 28 November 2005.

Included in the 22 May 2006 indictments were three felony charges of obtaining property by false pretenses, two charges of felony financial card fraud, and one charge of misdemeanor financial card fraud, all of which allegedly occurred on 10 March 2006. At the 7 November 2007 Session of New Hanover County Criminal Superior Court, defendant was scheduled to be tried on the aforementioned six charges contained in the 22 May 2006 indictment. The other indictments were not scheduled for trial at that time. The Honorable D. Jack Hooks, Jr., presided at the trial.

Before trial, defendant made a motion to continue, arguing that "he [did not] feel comfortable proceeding to trial" because he did not receive discovery until 17 October 2007 and did not receive the surveillance tapes until approximately a week after that. The trial court denied defendant's motion.

At trial, the State presented evidence that Melvin Blackmon's credit cards were stolen in March 2006, and within hours were used to purchase items from a Harris Teeter Grocery Store and two Lowe's Home Improvement Stores. Upon being contacted by the Wrightsville Beach Police Department, Kathy Holman, the manager of the Harris Teeter, produced a copy of the credit card receipt and the surveillance video of the transaction. Ms. Holman's testimony authenticated the receipt and the copy of the surveillance video that was eventually played for the jury. However, defendant objected to Ms. Holman being allowed to testify because she was identified as "Kathy Holbrook" on the State's witness list, and therefore, he did not have the opportunity to question jury members about their knowledge of Kathy Holman. The trial court overruled defendant's objection and allowed Ms. Holman to testify.

Detective Christopher Schwartz of the Wrightsville Beach Police Department testified that during his investigation, he retrieved surveillance videos and receipts from Harris Teeter and Lowe's stores, and these videos and receipts were shown to the jury. Defendant exercised his right to remain silent and presented no evidence. On 9 November 2007, the jury convicted defendant on two felony counts of obtaining property by false pretenses and one count each of felony and misdemeanor financial card fraud. The jury acquitted defendant on the remaining two charges contained in the 22 May 2006 indictment.

Following the verdict, the trial court excused the jury temporarily to address an indictment for attaining the status of an habitual felon. Counsel conferred briefly with defendant and announced to the trial court that defendant agreed to enter a plea agreement admitting his habitual felon status and pleading guilty to multiple charges pending against him in New Hanover County. Defendant had been arraigned on some of the pending charges, but not all of them, which included some sixty-eight felony counts. Defendant was then arraigned on forty-eight charges including having obtained the status of an habitual felon. After defendant was arraigned, the court proceeded to take the transcript of plea, consisting of twelve pages and listing sixty-eight felonies and two misdemeanors plus the habitual felon charge.[1] The prosecutor then submitted a written factual basis for the plea listing forty-seven felonies to which defendant stipulated. The listed felony charges included five breaking and entering a motor vehicle offenses, one common law robbery offense, three breaking and entering offenses, one financial card fraud offense, eight forgery of instruments offenses, and twenty-nine obtaining property by false pretenses offenses. Absent from the factual basis document, but included in the transcript of plea, were three uttering forged instrument offenses, one possession of stolen goods offense, one financial card identity fraud offense, fifteen forgery offenses, and one felony eluding arrest offense.

After accepting defendant's plea, the trial court reviewed defendant's prior record worksheet. The prior record worksheet submitted to the trial judge showed that defendant had eight Class H or I felonies carrying two points each and three misdemeanor convictions carrying one point each giving him a total of nineteen points. Defendant's attorney signed a stipulation agreement on the prior record worksheet, and defendant himself stated in open court that he had reviewed the worksheet. Based on the prior record worksheet and pursuant to the plea agreement, defendant's convictions and plea were consolidated, and he was sentenced at prior record level VI to an active term in the Department of Corrections of 135 to 171 months.

1. The transcript of plea actually lists a total of seventy-four felonies and three misdemeanors. However, three offenses, breaking and entering a motor vehicle and forgery of an instrument and misdemeanor larceny, contained in 05CRS65882 are marked through with a line and notation stating "VD 4/25/07," and four offenses, two breaking and entering a motor vehicle and one obtaining property by false pretense and one forgery, contained in 06CRS554865 and 06CRS54787 respectively are duplicates of felonies already listed on the transcript of plea. Therefore the correct total number of felonies listed on the transcript of plea is sixty-eight.

STATE v. FLINT

[199 N.C. App. 709 (2009)]

## II. Issues

Defendant argues the trial court erred by (1) denying his motion to continue, (2) allowing Ms. Holman to testify, (3) proceeding to the habitual felon indictment after trial, (4) accepting his guilty plea to multiple felonies and attaining the status of an habitual felon, and (5) sentencing him at a prior record level VI.

## III. Motion to Continue

[1] Defendant contends that the trial court abused its discretion by denying his motion to continue because he did not receive discovery at a reasonable time prior to his trial. We disagree.

This Court reviews a trial court's denial of motion to continue pursuant to an abuse of discretion standard. *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001), *cert. denied*, 535 U.S. 934, 152 L. Ed. 2d 221 (2002). A trial court abuses its discretion when the order is manifestly unsupported or when the order is so arbitrary that the decision could not have been the product of a reasoned decision. *State v. Hennis*, 323 N.C. 279, 285 372 S.E.2d 523, 527 (1988).

Defendant argues that he did not receive the discovery materials and videotapes in a reasonable time prior to trial, pursuant to N.C. Gen. Stat. § 15A-903(a)(1). The statute states in pertinent part that

(a) [u]pon motion of the defendant, the court must order the State to:

(1) [m]ake available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant.

N.C. Gen. Stat. § 15A-903(a)(1) (2007).

Defendant argued for his motion to continue before trial in the following manner:

MR. HOSFORD ["Defense Counsel"]: Your Honor, may it please the Court, Mr. Flint would like me to bring to the Court's attention that we received discovery relating to this case on October 17, 2007. I met with Mr. Flint after that date, provided it to him. He is not comfortable with going forward with trial at this point in time with that amount of notice.

The State provided the videotapes that they intend to introduce after that, approximately a week after that, after I met with

Mr. Flint, which is some 18 months after he was arrested. And he would like the Court to know that, and on his behalf he wants me to make a motion to continue it, as he doesn't feel comfortable proceeding at trial.

THE COURT: In the Court's discretion, that motion is denied.

N.C. Gen. Stat. § 15A-903(a) requires that the defendant make a motion in order for the court to order the State to make discovery available to defendant. In the case *sub judice*, defendant's trial began on 7 November 2007, and he did not receive discovery materials until 17 October 2007 and did not receive the videotapes until a week after. Under the cited statute, the defendant must make a motion in order for the State's obligation to provide discovery prior to trial. Neither the record on appeal nor the transcript contain a motion or written agreement to provide discovery. Without such documentation in the record, defendant has not shown that the State was under any obligation to provide discovery pursuant to N.C. Gen. Stat. § 15A-903(a)(1).

Furthermore, there is no basis in the record to show that additional time was necessary for the preparation of a defense. " 'To demonstrate that the time allowed [to prepare for trial] was inadequate, the defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." ' " *State v. Williams*, 355 N.C. 501, 540-41, 565 S.E.2d 609, 632 (2002), *cert. denied*, 537 U.S. 1125, 154 L. Ed. 2d 808 (2003) (citations omitted). There is no abuse of discretion where "defendant failed to provide any 'form of detailed proof indicating sufficient grounds for further delay.' " *State v. Beck*, 346 N.C. 750, 756-57, 487 S.E.2d 751, 756 (1997) (citation omitted). In this, the sole reason given by defense counsel for requesting the continuance was that defendant himself did not "feel comfortable" proceeding to trial, and therefore, he had directed his counsel to seek a continuance. Lacking an argument or evidence presented to the trial court that defendant would have needed additional time to prepare his defense or that he was materially prejudiced by the denial of his motion to continue, the trial court did not abuse its discretion in denying the motion.

### IV. Ms. Holman's Testimony

[2] Defendant argues that the trial court erred in allowing Karen Holman, a Harris Teeter employee, to testify because her name had been misstated as "Karen Holbrook," on the list of witnesses provided

by the State. Defendant contends that allowing Ms. Holman to testify was an abuse of discretion because he was not afforded the opportunity to question the jury panel about its knowledge of her.

Defendant bases his argument on N.C. Gen. Stat. § 15A-903(a)(3), which states, in pertinent part that

> (a) [u]pon motion of the defendant, the court must order the State to:
>
> . . . .
>
> (3) [g]ive the defendant, at the beginning of jury selection, a written list of the names of all other witnesses whom the State reasonably expects to call during the trial.

N.C. Gen. Stat. § 15A-903(a)(3)(2007). Section 15A-903(a)(3) goes on to state that "[a]dditionally, in the interest of justice, the court may in its discretion permit any undisclosed witness to testify." *Id.*

In the case *sub judice*, the record does not reveal any defense motion or written agreement for the State to provide a witness list, nor does the record contain the State's witness list that was supposedly provided to defendant. However, the transcript indicates that defense counsel did object to Ms. Holman being allowed to testify and that the trial judge, in his discretion, had overruled the objection. The pertinent part of the transcript is as follows:

> [DEFENSE COUNSEL]: And I also objected to testimony of Ms. Holman, as she was not listed on the witness list, and the Court overruled the objection. There was reference by the prosecution that Ms. Holman was listed in the discovery. I'll let the Court know that Ms. Holman was listed as Karen Holbrook at Harris Teeter in the discovery, so Ms. Holman's—for the first time as Ms. Holman—and she testified, and we objected to her testimony.
>
> THE COURT: And I believe what you further referenced was that you hadn't had opportunity to make inquiry of the jury as to Ms. Holman as opposed to Ms. Holbrook; is that right?
>
> [DEFENSE COUNSEL]: Yes.
>
> THE COURT: That's fine. The record will reflect that those objections were posed, and that the Court in its discretion overruled the same.

There are two issues with defendant's argument that the trial court abused its discretion by allowing Ms. Holman to testify. First, it is not clear from the record that defendant moved under N.C. Gen. Stat. § 15A-903(a)(3) to compel the State to produce a list of witnesses that it reasonably expected to call during the trial. Section 15A-903(a)(3) is clear that a motion by the defendant is required for the statute to be in effect. However, assuming *arguendo* that a motion was in fact made by defense counsel, N.C. Gen. Stat. § 15A-903(a)(3), nevertheless, provides that "in the interest of justice, the court may in its discretion permit *any* undisclosed witness to testify." N.C. Gen. Stat. § 15A-903(a)(3) (emphasis added).

Second, Ms. Holman's testimony in this case was only to authenticate the receipt and surveillance video taken the day of the alleged crime at the Harris Teeter. Ms. Holman explained that she received a call from Detective Schwartz of the Wrightsville Police Department asking her if she had video to show who had made a transaction with Melvin Blackmon's credit card on the morning of 10 March 2006. Ms. Holman then explained Harris Teeter's surveillance system to the jury, testified that the system was working properly on the morning of 10 March 2006, and explained what she did with the copy of the surveillance video before giving it to Detective Schwartz. Because Ms. Holman's testimony was purely to authenticate documents and tapes, the trial court was acting within its discretion to allow her testimony.

## V. Proceeding to Habitual Felon Indictment

[3] Defendant argues that the trial court committed error by: (1) proceeding to the habitual felon part of the trial; and (2) in accepting his guilty plea to multiple felonies, because the habitual felon indictment was not ancillary to the charges on which he was tried, the trial court lacked jurisdiction to proceed on it, and his plea was not voluntary. We disagree.

In North Carolina, an habitual felon indictment must be ancillary to a substantive felony and cannot stand on its own. *State v. Allen*, 292 N.C. 431, 456, 233 S.E.2d 585, 589 (1977). In the case *sub judice*, the habitual felon indictment was returned on 28 November 2005. However, defendant was not indicted on charges for obtaining property by false pretenses and financial card fraud until 22 May 2006. Furthermore, these crimes did not even occur until 10 March 2006, over three months after the habitual felon indictment was returned. This Court has stated that an habitual felon indictment may be re-

turned before, after, or simultaneously with a substantive felony indictment. *State v. Blakney*, 156 N.C. App. 671, 675, 577 S.E.2d 387, 390, *disc. review denied*, 357 N.C. 252, 582 S.E.2d 611 (2003). It is difficult to see how the habitual felon indictment could attach as ancillary to felonies that had not yet occurred. Therefore, defendant correctly contends that the habitual felon indictment was not ancillary to the indictments for obtaining property by false pretenses and financial card fraud, which defendant was convicted of at the 7 November 2007 Criminal Session of New Hanover County Superior Court.

Defendant contends that without valid substantive indictments for the habitual felon indictment to attach to, the trial court lacked jurisdiction to proceed with a bifurcated proceeding regarding defendant's habitual status. However, (1) the trial court never proceeded to the habitual felon phase of the trial due to defendant's plea, and (2) there were substantive felonies to which the habitual felon indictment was ancillary.

First, the trial court never submitted to the jury for its determination the 28 November 2005 habitual felon indictment. After defendant was found guilty of two felony counts of obtaining property by false pretenses, and one felony and one misdemeanor count of financial card fraud, the transcript reads as follows:

THE COURT: Has [defendant] at this point been arraigned as to the allegations contained in the habitual felon status file?

MR. DAVID [Prosecutor]: Your Honor, it's my understanding he has been previously arraigned on that charge, and the State is ready to proceed at this time.

DEFENSE COUNSEL: Your Honor, I don't know if he's been arraigned, actually, on that charge.

THE COURT: We can arraign him at this time.

[PROSECUTOR]: May I have a moment to confer with counsel?

THE COURT: You sure can. (Counsel conferred.)

THE COURT: Do you want a moment with your client?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: We'll stand at ease for about three minutes' time.

After the recess, defense counsel indicated that defendant was "going to dispose of all his cases with a plea." Therefore, due to defendant's plea, the habitual felon phase of the trial did not occur.

Second, the trial court had jurisdiction to accept defendant's plea because the habitual felon indictment was ancillary to prior pending substantive indictments. The habitual felon indictment was returned on 28 November 2005. Two weeks prior to the habitual felon indictment, on 14 November 2005, defendant was indicted: in 05CRS57605 for breaking and entering a motor vehicle on 13 May 2005; in 05CRS58997 for financial card fraud, forgery of an instrument, and uttering a forged instrument on 9 June 2009, and forgery of an instrument and uttering a forged instrument on 10 June 2005; and in 05CRS59853 for obtaining property by false pretenses. Additionally, on 12 December 2005, defendant was indicted in 05CRS58994 for common law robbery on 9 June 2005. Therefore, the habitual felon indictment was, at the least, ancillary to these multiple felony indictments, meaning the trial court had proper jurisdiction to accept a plea from defendant as to all his pending charges and to his status as an habitual felon.

**[4]** Finally, defendant argues that because he could not have been sentenced as an habitual felon for the charges on which the jury convicted him, his subsequent plea and admission to the status of an habitual felon were not the product of his informed choice and therefore invalid. In order for a plea of guilty to be valid, it must be made knowingly and voluntarily. *State v. Allen*, 164 N.C. App. 665, 669, 596 S.E.2d 261, 263 (2004). Defendant cites N.C. Gen. Stat. § 15A-1022(a) as grounds for this argument. Section 15A-1022(a), which governs the duties of a superior court judge when accepting a plea of guilty or no contest, provides in pertinent part:

[A] superior court judge may not accept a plea of guilty or no contest from the defendant without first addressing him personally and:

(1) Informing him that he has a right to remain silent and that any statement he makes may be used against him;

(2) Determining that he understands the nature of the charge;

(3) Informing him that he has a right to plead not guilty;

(4) Informing him that by his plea he waives his right to trial by jury and his right to be confronted by the witnesses against him;

(5) Determining that the defendant, if represented by counsel, is satisfied with his representation;

(6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge[.]

N.C. Gen. Stat. § 15A-1022(a) (2007). Because N.C.G.S. § 15A-1022 relates only to the duties of a trial judge prior to "accept[ing] a plea of guilty," we look only at the record relating to the court's examination of defendant prior to its approval of his tendered pleas of guilty. *See State v. Wynn,* 278 N.C. 513, 180 S.E.2d 135 (1971).

In the case *sub judice,* the trial judge complied with N.C. Gen. Stat. § 15A-1022(a) by addressing defendant personally. The pertinent part of the transcript includes:

THE COURT: If you will have [defendant] sworn to the transcript, please.

(The oath was administered to the defendant by the clerk.)

THE COURT: You are . . . Lance Dylan Flint, age 35?

THE DEFENDANT: Yes, sir.

THE COURT: You are able to hear and understand me?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you have the right to remain silent, and that anything you say can be used against you?

THE DEFENDANT: Yes, sir.

THE COURT: Have you completed the GED, read and write on the left [sic] of a high school graduate?

THE DEFENDANT: Yes, sir.

THE COURT: Are you now under the influence of alcohol, drugs, narcotics, medicines, or any other intoxicating or impairing substances?

THE DEFENDANT: No, sir.

THE COURT: The transcript reflects that you last used or consumed such a substance two years ago; is that correct?

STATE v. FLINT

[199 N.C. App. 709 (2009)]

THE DEFENDANT: Yes, sir.

THE COURT: Have the charges been explained to you by counsel, and do you understand the nature of these charges and every element of each charge?

THE DEFENDANT: Yes, sir.

THE COURT: Have you and your attorney discussed the possible defenses, if there are any, for these charges?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with his legal services?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: Do you understand that you have the right to plead not guilty and be tried by a jury, and at such a trial to cross-examine the witnesses against you?

THE DEFENDANT: Yes, sir.

THE COURT: And do you understand that by pleading guilty you give up these and other valuable constitutional rights to a jury trial, including for sentencing matters?

THE DEFENDANT: Yes, sir.

THE COURT: You're a U.S. citizen?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you are entering pleas of guilty in the file 2005-CRS-20449 to the status of a habitual felon, which carries a Class C punishment? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And that the maximum possible punishment you could receive for that offense would be as much as—as 261 months?

THE DEFENDANT: Yes, sir.

THE COURT: All right, sir. Now, otherwise, in the varying file numbers which you have heard called out and the charges within each file that Madam Prosecutor called out, do you un-

**STATE v. FLINT·**

[199 N.C. App. 709 (2009)]

derstand that you are entering pleas of guilty as to each of those individual charges?

THE DEFENDANT: Yes, sir.

THE COURT: They are written on this transcript, and you have had the opportunity to see and read each of those, and, in fact, did so; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Do you understand that for these offenses, you face a total possible punishment of as much as 19,314 months plus 240 days?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: And the prosecutor and your lawyer have advised me that under this plea arrangement you will receive a maximum sentence of 135 months to 171 months. In other words, they're all going to be consolidated, and you would be sentenced as a habitual felon under class C to the minimum from the presumptive range for your appropriate class. Do you understand that?

THE DEFENDANT: Yes, sir. I do.

THE COURT: Do you now personally accept this plea arrangement.

THE DEFENDANT: I do.

THE COURT: And is this correct as being your full plea arrangement?

THE DEFENDANT: Yes, sir.

THE COURT: Other than this plea arrangement, has anyone promised you anything or threatened you in any way to cause you to enter these pleas against your wishes?

THE DEFENDANT: No, sir.

THE COURT: Do you enter these pleas of your own free will, fully understanding what you're doing?

THE DEFENDANT: Yes, sir. I do.

It is clear from the record that the court informed defendant of every right listed in N.C. Gen. Stat. § 15A-1022(a), the maximum possible sentence, and determined defendant understood the charges and was satisfied with his trial counsel. Defendant's responses to the court before it accepted his guilty pleas did not indicate any misunderstanding. Because the trial court complied with N.C. Gen. Stat. § 15A-1022(a) in determining that defendant's pleas were voluntarily given and a product of informed choice, and defendant's answers did not indicate any misunderstanding requiring further inquiry by the trial court, the trial court did not err in accepting defendant's guilty pleas.

## VI. Accepting Plea Agreement

[5] Defendant asserts that his guilty pleas to multiple felonies and his admission to having attained the status of an habitual felon are invalid because the plea lacks an adequate factual basis. We agree.

Defendant challenges the validity of his guilty pleas in two ways. First, defendant argues that the failure of the trial court to do a formal arraignment on every charge was error. As this issue was not preserved by an assignment of error as required by Rule 10(a) of the Rules of Appellate Procedure, it is deemed to be waived. *See* N.C. R. App. P. Rule 10(a) (2009) ("Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal[.]"); *see also Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008) (holding "a party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal").

Assuming *arguendo* that defendant properly assigned error to this issue, the trial court's failure to arraign on all charges contained in the plea is not error. " 'The failure to conduct a formal arraignment itself is not reversible error. The purpose of an arraignment is to allow a defendant to enter a plea and have the charges read or summarized to him and the failure to do so is not prejudicial error unless defendant objects and states that he is not properly informed of the charges.' " *State v. Artis*, 174 N.C. App. 668, 679, 622 S.E.2d 204, 211 (2005) (citations omitted), *disc. review denied*, 360 N.C. 365, 630 S.E.2d 188 (2006). Because defendant did not object nor did he claim that he was not properly informed of the charges contained in the plea, the trial court did not commit prejudicial error.

**[6]** Second, defendant argues that there was an insufficient factual basis for the plea. Preliminarily, we note that defendant has no appeal of right as to this issue. *See State v. Bolinger,* 320 N.C. 596, 601, 359 S.E.2d 459, 462 (1987) ("[A] defendant is not entitled as a matter of right to appellate review of his contention that the trial court improperly accepted his guilty plea.") Defendant stated in his brief that "in the event this Court determines that [defendant] does not have an appeal as of right from his guilty plea . . . [defendant] requests that this Court accept this as a petition for certiorari[.]" Accordingly, we treat defendant's appeal as a petition for writ of certiorari on this issue, which we now allow. Therefore, we address the merits of defendant's argument.

Essentially, the question presented by defendant is whether the trial court complied with N.C. Gen. Stat. § 15A-1022(c) in determining there was a factual basis for defendant's guilty plea. Guilty pleas must be substantiated in fact as prescribed by the statute at issue in this case:

> The judge may not accept a plea of guilty or no contest without first determining that there is a factual basis for the plea. This determination may be based upon information including but not limited to:
>
> (1) A statement of the facts by the prosecutor.
>
> (2) A written statement of the defendant.
>
> (3) An examination of the presentence report.
>
> (4) Sworn testimony, which may include reliable hearsay.
>
> (5) A statement of facts by the defense counsel.

N.C. Gen. Stat. § 15A-1022(c).

The five sources listed in the statute are not exclusive, and therefore "[t]he trial judge may consider any information properly brought to his attention in determining whether there is a factual basis for a plea of guilty[.]" *State v. Dickens,* 299 N.C. 76, 79, 261 S.E.2d 183, 185-86 (1980). Nonetheless, such information "must appear in the record, so that an appellate court can determine whether the plea has been properly accepted." *State v. Sinclair,* 301 N.C. 193, 198, 270 S.E.2d 418, 421 (1980). Further, in enumerating these five sources, the statute "contemplate[s] that some substantive material independent of the plea itself appear of record which

tends to show that defendant is, in fact, guilty." *Id.* at 199, 270 S.E.2d at 421-22.

Here, the record before the trial court provides insufficient evidence to demonstrate that each guilty plea had a proper factual basis. There was neither a written statement by defendant nor a statement of the facts by defense counsel in the record. Additionally, there was no sworn testimony given with regard to the factual basis, nor was there any indication that an examination of the presentence report was conducted. Therefore, the record indicates that the trial court relied solely on the factual basis document presented by the State in determining the factual basis of defendant's guilty plea. The State's written factual basis document addresses 47 felony charges. However, the transcript of plea addresses 68 felony charges plus the habitual felon indictment. The transcript indicates that the trial court relied on the State's factual basis document as the factual basis for defendant's entire plea. The pertinent part is as follows:

THE COURT: Do you agree that there are facts to support your pleas, and consent to a written summary of the factual basis regarding these matters?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: Let's have the record reflect the finding of the matter of the factual basis for each of the matters to which he is pleading guilty, both the substantive charges and particularly the status of a habitual felon contained in file 2005-20449.

. . . .

THE COURT: . . . Madam Clerk, Lance Flint, this date pleading guilty pursuant to transcript to each of the items listed on that transcript, that is, six counts of breaking and entering a motor vehicle, one common law robbery, three counts of breaking and entering buildings, one financial card fraud offense, eight counts of forgeries of instruments, 29 counts of obtaining property by false pretenses; and just in case I did not earlier specifically say so, in file 2005-CRS-20449 to the class C status of a habitual felon. As to each of the above, [defendant] is found guilty.

Although the trial court stated that defendant was "pleading guilty pursuant to transcript to each of the items listed on that transcript," it is, nevertheless, clear that the trial court was solely relying

on the State's factual basis document during defendant's plea to provide the factual basis for the entire plea. The trial court listed only the felonies included on the State's factual basis document when announcing defendant's plea. A second indication is the trial court's mistake that defendant was pleading guilty to six breaking and entering a motor vehicle charges when he was only pleading guilty to five of those particular charges. On the State's factual basis document, the heading indicated "Six Break and Enter a Motor Vehicle Offenses." However, one of the breaking and entering a motor vehicle charges is marked out with several lines, indicating that defendant was actually only pleading to five of those charges. This mistake shows that the trial court was solely relying on the State's factual basis document as the factual basis for the entire plea. Finally, during the plea the trial court never mentioned by name or case number any other felony that was not contained in the factual basis document except for the habitual felon charge.

Furthermore, while it is true that the trial court had before it the transcript of plea, which listed all of the felonies defendant was pleading guilty to, the transcript itself cannot provide the factual basis for the plea in and of itself. *Sinclair*, 301 N.C. at 199, 270 S.E.2d at 421 (holding the transcript was insufficient for the trial court to determine the existence of a factual basis, reasoning that "[i]f the plea itself constituted its own factual basis, the statute requiring a factual basis to support the plea would be meaningless").

The State argues that the indictments for each of the charges provide the factual basis for the twenty-one felonies not found in the factual basis document. While it is true that the indictments are contained in the record on appeal, it is not clear if they were, in fact, before the trial court during defendant's plea. The trial court, in its factual basis determination, never mentions the indictments and only refers to the State's factual basis document. Therefore, the trial court erred in accepting defendant's guilty plea because there was nothing before the court to support an independent judicial determination factual basis for twenty-one of the felonies listed on the transcript of plea.

Despite the fact that forty-seven of the felonies that defendant pled guilty to are supported by an independent factual basis, we must, nevertheless, remand this matter to the trial court. In *State v. Stonestreet*, 243 N.C. 28, 89 S.E.2d 734 (1955), our Supreme Court stated:

Where two or more indictments or counts are consolidated for the purpose of judgment, and a single judgment is pronounced thereon, even though the plea of guilty or conviction on one is sufficient to support the judgment and the trial thereon is free from error, the award of a new trial on the other indictment(s) or count(s) requires that the cause be remanded for proper judgment on the valid count.

*Id.* at 31, 89 S.E.2d at 737.

Thus, we vacate the trial court's judgment and remand to the trial court. Because defendant has requested that he be relieved of his plea agreement, we also set aside defendant's plea agreement due to failure of the State to provide a factual foundation. This case is remanded to the trial court where defendant may "withdraw his guilty plea and proceed to trial on the criminal charges . . . [or] attempt to negotiate another plea agreement[.]" *State v. Wall*, 348 N.C. 671, 676, 502 S.E.2d 585, 588 (1998).

## VII. Prior Record Level

**[7]** Defendant asserts that the trial court erred in sentencing defendant at a prior record level VI because he should have been sentenced at prior record level V. We agree.

The State recognizes that the crimes specifically listed in the record do not total the points on the worksheet, but nevertheless argues that the trial court was entitled to rely on defendant's stipulation. We find this argument unpersuasive..

"Although defendant's stipulation as to prior record level is sufficient evidence for sentencing at that level . . . the trial court's assignment of level [VI] to defendant was an improper conclusion of law, which we review *de novo*." *State v. Fraley*, 182 N.C. App. 683, 691, 643 S.E.2d 39, 44 (2007). Additionally, "[s]tipulations as to questions of law are generally held invalid and ineffective, and not binding upon the courts, either trial or appellate." *State v. Prevette*, 39 N.C. App. 470, 472, 250 S.E.2d 682, 683, *appeal dismissed, disc. review denied,* 297 N.C. 179, 254 S.E.2d 38 (1979).

The prior record worksheet submitted to the trial court showed that defendant had eight Class H or I felonies, which carried two points each and three misdemeanor convictions, which carried one point each, giving defendant a total of nineteen points. Defendant contends the trial court erred in calculating the prior record level

points for the following convictions: (1) driving while license revoked on 13 January 1994, (2) trafficking in marijuana on 28 June 2002, and (3) the status of being an habitual felon on 10 November 2005 in Brunswick County.

First, defendant's driving while license revoked conviction on 13 January 1994 should not have been included on the prior record worksheet. Section 15A-1340.14(b)(5) provides that each misdemeanor conviction is worth one point. N.C. Gen. Stat. § 15A-1340.14(b)(5). However, for purposes of the subsection, a misdemeanor is defined as "any Class A1 and Class 1 nontraffic misdemeanor offense, impaired driving (G.S. 20-138.1), impaired driving in a commercial vehicle (G.S. 20-138.2), and misdemeanor death by vehicle (G.S. 20-141.4(a2)), but not any other misdemeanor traffic offense under Chapter 20 of the General Statutes." N.C.G.S. § 15A-1340.14(b)(5). Being that driving while license revoked is a misdemeanor traffic offense, which is not included in Section 15A-1340.14(b)(5), it is not a conviction that can be used in determining a defendant's prior record level. Defendant's only other conviction on 13 January 1994 is operating a vehicle with no insurance, which also cannot be used in determining a defendant's prior record level. Therefore, the trial court committed error by including one point for defendant's driving while license revoked conviction on his prior record worksheet.

Second, two points for defendant's trafficking in marijuana conviction on 28 June 2002 should not have been included on the prior record worksheet. Section 14-7.6 provides in pertinent part that "[i]n determining the prior record level, convictions used to establish a person's status as an habitual felon shall not be used." N.C. Gen. Stat. § 14-7.6 (2007). The 28 November 2005 indictment that alleged defendant to be an habitual felon listed the 28 June 2002 conviction for trafficking in marijuana as one of the offenses used to indict defendant as an habitual felon. Therefore, the trafficking in marijuana conviction should not have been included on the prior record worksheet as a Class H felony giving defendant two points. However, defendant does have a countable charge from 28 June 2002 for possession of drug paraphernalia, a Class 1 misdemeanor. Therefore, defendant should have received only one point for his misdemeanor conviction from 28 June 2002, and not two points for a Class H felony that was used in the habitual felon indictment.

Finally, defendant assigns error in including two points on the prior record worksheet for his habitual felon conviction from

Brunswick County on 10 November 2005. The habitual felon convic-
tion is handwritten on the bottom of the last page of the prior record
worksheet, and subsequently, the underlying felony is not listed on
the worksheet. Only the points from the underlying felony can be
counted in the prior record level, not points for the punishment
enhancement. *State v. Vaughn*, 130 N.C. App. 456, 460, 503 S.E.2d
110, 113 (1998), *aff'd per curiam*, 350 N.C. 88, 511 S.E.2d 638 (1999).
This is because being an habitual felon is not a felony in and of itself.
*Id.* It is, rather, " 'a status the attaining of which subjects a person
thereafter convicted of a crime to an increased punishment for that
crime.' " *Id.* (citation omitted). While the record is clear that the
underlying felony had to be a Class H or I carrying two points,[2] it is,
nevertheless, unclear as to what the underlying felony actually is.
However, defendant concedes in his brief that he should receive two
points for the underlying felony for the prior habitual felon convic-
tion. Therefore, defendant was properly given two points for the
underlying felony of the prior habitual felon conviction.

Based on the errors detailed above, defendant's points for felony
sentencing should have been seventeen. Section 15A-1340.14(c) pro-
vides that "[t]he prior record levels for felony sentencing are: (5)
Level V—At least 15, but not more than 18 points [and] (6) Level VI—
At least 19 points." N.C.G.S. § 15A-1340.14(c). Therefore, it appears
that defendant was improperly sentenced at a level VI with 19 points,
and should have been sentenced at a level V with a total of 17 points.
According to the plea agreement, defendant should have been sen-
tenced as a Class C, Level V at the minimum presumptive range,
meaning defendant should have received a sentence of 121 to 151
months in the Department of Corrections instead of a sentence of 135
to 171 months.

## VIII. Conclusion

For the foregoing reasons, we find no error in defendant's trial
and uphold the jury's conviction of defendant on two felony counts of
obtaining property by false pretenses and one felony and one misde-
meanor count of financial card fraud. However, the trial court lacked
a factual basis for some charges on defendant's plea agreement, and
therefore, we vacate the judgment and set aside defendant's plea
agreement. We remand this case for proceedings consistent with this
opinion, including the resentencing of defendant.

---

2. The prior record worksheet shows that the only felony convictions for defend-
ant are for Class H and I felonies that carry 2 points.

**STATE v. FLINT**

[199 N.C. App. 709 (2009)]

No error in part; vacated in part; and remanded in part.

Judge WYNN concurs.

Judge JACKSON concurs in part and dissents in part in a separate opinion.

JACKSON, Judge, concurring in part, dissenting in part.

For the reasons stated below, I must respectfully dissent from the Court's decision to address defendant's claim that his guilty pleas were based on an insufficient factual basis. I concur, however, in the remaining four issues presented.

Because I believe that defendant did not petition the Court properly for writ of *certiorari*, I would deny defendant's petition. North Carolina General Statutes, section 15A-1444 provides that

> the defendant is not entitled to appellate review as a matter of right when he has entered a plea of guilty or no contest to a criminal charge in the superior court, but he may petition the appellate division for review by writ of certiorari.

N.C. Gen. Stat. § 15A-1444(e) (2007). However, petitions for writ of *certiorari* are constrained by our Rules of Appellate Procedure. N.C. Gen. Stat. § 15A-1444 cmt. (2007) ("[D]iscretionary review is necessarily controlled by the rules of the appellate division"). The Court's discretion to issue a writ of *certiorari* is limited to

> appropriate circumstances . . . when the right to prosecute an appeal has been lost by failure to take timely action, or when no right of appeal from an interlocutory order exists, or for review pursuant to G.S. 15A-1422(c)(3) of an order of the trial court denying a motion for appropriate relief.

N.C. R. App. P. 21(a)(1) (2007). *See, e.g., State v. Hadden*, 175 N.C. App. 492, 497, 624 S.E.2d 417, 420 (2006); *State v. Pimental*, 153 N.C. App. 69, 76-77, 568 S.E.2d 867, 872 (2002). The petition should be filed with the clerk of the Court of Appeals and must include

> a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the reasons why the writ should issue; and certified copies of the judgment, order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition.

N.C. R. App. P. 21(c) (2007).

COMMERCIAL CREDIT GRP., INC. v. BARBER

[199 N.C. App. 731 (2009)]

In the instant case, defendant simply noted in his brief that "in the event this Court determines that [defendant] does not have an appeal as of right from his guilty plea . . . [defendant] requests that this Court accept this as a petition for certiorari[.]" Furthermore, defendant's appeal does not conform to the requirements of Rule 21. As I would deny defendant's petition, I must dissent.