ARROWOOD, Judge.
Marquis Jarvis Whitmore ("defendant") appeals from judgment entered on his conviction of felony death by vehicle. For the reasons stated herein, we find no error in defendant's trial and remand for resentencing.
I. Background
On 9 March 2015, a Halifax County Grand Jury indicted defendant for second degree murder, aggravated felony death by motor vehicle, assault with a deadly weapon, and careless and reckless driving.
The matter came on for trial on 5 February 2018 in Halifax County Superior Court, the Honorable Cy A. Grant presiding. The State's evidence tended to show as follows.
On 20 December 2014, defendant and two other individuals went to the Tight Edge barbershop in Roanoke Rapids, where their friend, Christopher Gay ("Mr. Gay"), worked as a barber. The group left the barbershop with Mr. Gay, and drove to a Hardee's restaurant to get food. Mr. Gay and defendant then returned to the barbershop. Defendant sat in Mr. Gay's barber chair in anticipation of having his hair cut.
At the same time, Jacobi Harvey ("Mr. Harvey") was at the barber shop with his son, who was getting a haircut. Defendant saw Mr. Harvey and asked him, "mother fucker, you see something?" Mr. Harvey understood defendant's question to mean, "Did I have a problem with him or something." Mr. Harvey replied, "you see something?" Defendant approached Mr. Harvey. Mr. Harvey was afraid because defendant is known to carry a gun and "to shoot up people's houses," so he brandished a gun and told defendant, "I don't want no problem; go ahead about your business."
Defendant told Mr. Harvey he was, "going to get [his] gun[,]" and walked out of the barbershop. Mr. Harvey followed him out the door and shot defendant in his calf to prevent him from retrieving his gun. Defendant fled in his car, turning left onto Tenth Street towards Park Avenue and Becker Drive. Mr. Harvey went inside, paid for his son's haircut, and went home. No one followed defendant.
Subsequently, approximately "six or seven blocks" from the barbershop, Elaine Wong was in her car, stopped at the intersection of Tenth Street and Park Avenue. She saw a black car run the intersection's red light at a high speed, proceeding towards Becker Drive. The black car was later identified as defendant's car.
Witnesses Wes Deaton ("Mr. Deaton") and David Ferrell then observed the black car approach the intersection of Tenth Street and Becker Drive, which was "a mile or a mile and a half to two miles" from the barbershop. Mr. Deaton testified that, instead of stopping when the light facing Tenth Street turned red, defendant swerved into the turning lane and sped through the red light at what appeared to be twice the speed limit. Defendant's brake lights never illuminated, and the car traveled into the opposite, oncoming lanes of traffic before it entered the intersection.
When defendant ran the second red light at Tenth Street and Becker Drive, he hit a red Honda driven by Leslie Fishel ("Ms. Fishel"). Another driver, Ebony Burgess ("Ms. Burgess")'s car was struck during the collision. First responders transported both defendant and Ms. Fishel to the hospital, where Ms. Fishel died as a result of the injuries she sustained in the crash.
Detective Jeff Davis responded to the scene, and observed a vodka bottle and a solution splashed on the floor of defendant's car. He testified defendant's car smelled strongly of marijuana. At the hospital, Deputy Police Chief Andy Jackson noticed the smell of alcohol and marijuana on defendant's person and reported this information to Detective Davis. Detective Davis testified that when he arrived at the hospital and approached defendant, defendant's eyes were glassy and his speech slurred.
At the close of the State's evidence, defendant moved to dismiss the charges of second degree murder and aggravated felony death by motor vehicle for insufficient evidence. Defendant did not present evidence and renewed his motion to dismiss at the close of evidence. The trial court denied the motion, but, on its own motion, dismissed the careless and reckless driving and assault with a deadly weapon charges.
The jury received three verdict forms: one for second degree murder based on the violation of traffic laws, one for second degree murder based on impaired driving, and one for aggravated felony death by motor vehicle. The forms also listed lesser included offenses. On 9 February 2018, the jury found defendant guilty of the lesser included offenses of involuntary manslaughter on the second degree murder (violation of traffic laws) charge, and felony death by motor vehicle on the aggravated felony death by motor vehicle charge. The trial court declared a mistrial on the second degree murder (impaired driving) charge because the jury was unable to reach a verdict.
The trial court sentenced defendant to 128 to 166 months imprisonment for the offense of felony death by motor vehicle, and arrested the conviction for involuntary manslaughter.
Defendant appeals.
II. Discussion
Defendant raises four arguments on appeal: (1) the trial court erred by denying defendant's motion to dismiss the aggravated felony death by motor vehicle charge; (2) the trial court plainly erred by failing to instruct the jury on the defenses of necessity and duress; (3) defendant was denied effective assistance of counsel; and (4) the trial court erred by sentencing defendant as a prior record level VI instead of a prior record level IV. We address each argument in turn.
A. Motion to Dismiss
Defendant argues the trial court erred by denying defendant's motion to dismiss the aggravated felony death by motor vehicle charge because there was insufficient evidence that he was appreciably impaired. We disagree.
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455, cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000) (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).
The essential elements of the offense of aggravated felony death by motor vehicle are:
(1) The person unintentionally causes the death of another person,
(2) The person was engaged in the offense of impaired driving under G.S. 20-138.1 or G.S. 20-138.2,
(3) The commission of the offense in subdivision (2) of this subsection is the proximate cause of the death, and
(4) The person has a previous conviction involving impaired driving, as defined in G.S. 20-4.01(24a), within seven years of the date of the offense.
N.C. Gen. Stat. § 20-141.4(a5) (2017). The lesser included charge of felony death by vehicle also requires that "[t]he person was engaged in the offense of impaired driving under G.S. 20-138.1 or G.S. 20-138.2 [.]" Id. § 20-141.4(a1). Under N.C. Gen. Stat. § 20-138.1(a) (2017),
[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:
(1) While under the influence of an impairing substance; or
(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration; or
(3) With any amount of a Schedule I controlled substance, as listed in G.S. 90-89, or its metabolites in his blood or urine.
N.C. Gen. Stat. § 20-138.1(a).
Here, the State charged defendant with impaired driving under N.C. Gen. Stat. § 20-138.1(a)(1), driving under the influence of an impairing substance. To establish that defendant was under the influence of an impairing substance, "the State need not show that the defendant [was] 'drunk,' i.e., that his or her faculties are materially impaired." State v. Parisi , 135 N.C. App. 222, 225, 519 S.E.2d 531, 533 (1999) (quoting State v. Harrington , 78 N.C. App. 39, 45, 336 S.E.2d 852, 855 (1985) ). The effect needs only "be appreciable, that is, sufficient to be recognized and estimated, for a proper finding that defendant was impaired." Id.
Defendant cites several facts in support of his argument that the motion to dismiss should have been granted because there was insufficient evidence of impairment, including: (1) the witnesses from the barbershop did not testify that defendant was impaired; (2) no officer testified that he formed an opinion that defendant was impaired; (3) Deputy Police Chief Andy Jackson noticed the smell of alcohol and marijuana on defendant's person and reported this information to Detective Davis when Detective Davis arrived at the hospital, but Detective Davis did not testify to these same indicators of impairment; instead, he testified that when he approached defendant at the hospital, defendant's eyes were glassy and his speech slurred; (4) defendant did not admit to consuming an impairing substance; and (5) there were no field sobriety tests or blood tests admitted into evidence.
Although these deficiencies in the evidence are contrary to the evidence of impairment presented at trial, our Court is not tasked with examining the weight of evidence when reviewing a trial court's denial of a motion to dismiss. Instead, our Court reviews only whether the State provided "more than a scintilla of evidence of each essential element of the offense and that the defendant was the perpetrator of the offense." State v. Davy , 100 N.C. App. 551, 556, 397 S.E.2d 634, 636-37, writ denied, review denied, appeal dismissed , 327 N.C. 638, 398 S.E.2d 871 (1990) (citation and internal quotation marks omitted). Where the State meets this burden, our Court must hold the trial court did not err in its denial of a motion to dismiss. Here, defendant contests only that the State failed to provide substantial evidence that he drove under the influence of an impairing substance. Accordingly, our inquiry is whether the State put forth substantial evidence of this element. See id. (citation omitted).
The State's evidence tending to show defendant drove under the influence of an impairing substance included: (1) defendant drove erratically at a high speed; (2) a police officer smelled alcohol on defendant's person; (3) a police officer observed evidence of an open container of alcohol and a cup that smelled like alcohol in defendant's car; (4) a police officer smelled marijuana on defendant's person and in his car; (5) a police officer saw that defendant's eyes were bloodshot and glassy after the collision took place; (6) a police officer observed that defendant's speech was slurred after the collision took place; and (7) defendant tested positive for cannaboids, cocaine, and opiates. Viewing defendant's behavior, the observations and testimony of officers, and that defendant tested positive for cannaboids, cocaine, and opiates in the light most favorable to the State, we hold there was substantial evidence that defendant was appreciably impaired.
Therefore, the trial court did not err by allowing the jury to decide whether defendant was under the influence of an impairing substance, and the motion to dismiss was properly denied.
B. Jury Instructions
Next, defendant argues the trial court plainly erred by failing to instruct the jury on the defenses of necessity and duress.
Defendant alleges plain error because he did not object on this basis at trial. N.C.R. App. P. 10(a)(2), (a)(4) (2019). To demonstrate the trial court plainly erred, defendant "must show that the instructions were erroneous and that absent the erroneous instructions, a jury probably would have returned a different verdict. The error must be so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." State v. Tirado , 358 N.C. 551, 574, 599 S.E.2d 515, 531-32 (2004) (citations and internal quotation marks omitted).
"Generally, the trial court must give an instruction on any substantial feature of a case, regardless of whether either party has specifically requested an instruction. Any defense raised by the evidence is a substantial feature of the case, and as such an instruction is required." State v. Smarr , 146 N.C. App. 44, 54, 551 S.E.2d 881, 887-88 (2001) (citations omitted). The burden rests upon the defendant to establish an affirmative defense, "unless it arises out of the State's own evidence, to the satisfaction of the jury." State v. Miller , --- N.C. App. ----, ----, 812 S.E.2d 692, 694 (2018) (citation and internal quotation marks omitted).
"For a jury instruction to be required on a particular defense, there must be substantial evidence of each element of the defense when the evidence [is] viewed in the light most favorable to the defendant[.]" State v. Hudgins , 167 N.C. App. 705, 709, 606 S.E.2d 443, 446 (2005) (citations and internal quotation marks omitted). Substantial evidence exists when there "is evidence that a reasonable person would find sufficient to support a conclusion." Id. (citation omitted).
Here, defendant did not present evidence at trial, and contends that the State's own evidence raised the defenses of necessity and duress. Although "[m]odern cases have tended to blur the distinction" between necessity and duress, the defenses remain distinct under North Carolina law. Miller , --- N.C. App. at ----, 812 S.E.2d at 696 (citation and internal quotation marks omitted).
1. Necessity
To establish necessity, a defendant must prove that: (1) he took a reasonable action, (2) "to protect life, limb, or health of a person, and (3) no other acceptable choices [were] available." Id. at ----, 812 S.E.2d at 695 (citation and internal quotation marks omitted). In contrast with duress, "the manner in which the elements of necessity are worded implies that they are analyzed pursuant to an objective standard of reasonableness, not a subjective standard[.]" Id. at ----, 812 S.E.2d at 698.
Here, defendant contends the evidence at trial was sufficient to establish necessity as a substantial feature of the case because his erratic driving was reasonably taken "to protect life, limb, or health of a person" as he fled Mr. Harvey, and "no other acceptable choices [were] available." Id. at ----, 812 S.E.2d at 695. Although Mr. Harvey did not pursue him, defendant argues that his belief that he was being followed was objectively reasonable in light of the altercation at the barbershop and his injury. In support of his argument, defendant points to Ms. Short's testimony at trial that, immediately following the accident, defendant "hopped out" of his car, and said "somebody was coming after him and that he had been shot." Defendant maintains that, under Miller , this evidence is sufficient to establish necessity as a substantial feature of the case.
In Miller , our Court held the trial court erred when it failed to instruct on necessity before submitting a charge of driving while intoxicated to the jury when there was substantial evidence
that could have supported a jury determination that a man drawing a previously concealed handgun, immediately after having been knocked to the ground by Defendant, presented an immediate threat of death or serious bodily injury to Defendant, [his wife], or a bystander, and that attempting to escape from that danger by driving the golf cart for a brief period on the highway was a reasonable action taken to protect life, limb, or health.
Id. at ----, 812 S.E.2d at 703 (citations omitted). This evidence included defendant's wife's testimony that the man was going to shoot the defendant after an intense altercation, and that she did not doubt that she might have been hurt or killed if she and defendant had not fled. Id. Additionally, defendant and his wife were pulled over by an officer only approximately two-tenths of a mile from the altercation. Id. at ----, 812 S.E.2d at 705.
In contrast, here, there was no evidence that it was necessary for defendant to continue to flee from Mr. Harvey after he left the barbershop, and defendant had ample opportunity to realize he was not being pursued in the one or two miles he traveled before colliding with the victim's car. Thus, the belief that it was necessary to flee Mr. Harvey was not objectively reasonable. Neither does defendant's injury, without more, establish that it was necessary for him to run multiple red lights, swerve into incorrect lanes, and travel at a high speed, as there was no evidence presented that there were no other acceptable choice available when defendant decided to drive in such an erratic manner.
Therefore, there was not substantial evidence of each element of the necessity defense. Consequently, we hold the trial court did not err when it did not instruct the jury on necessity. Because the trial court did not err, defendant cannot establish plain error.
2. Duress
We now consider whether the trial court erred when it failed to instruct on the defense of duress.
The elements of duress are (1) that a defendant's illegal actions were caused by [the defendant's] reasonable fear that [the defendant or another] would suffer (2) immediate death or serious bodily injury[,] (3) if [the defendant had] not so act[ed][,] and (4) the defendant had no reasonable opportunity to avoid doing the [illegal] act without undue exposure to death or serious bodily harm.
Id. at ----, 812 S.E.2d at 698 (citation and internal quotation marks omitted) (alterations in original). "[D]uress must be present, imminent or impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done." State v. Henderson , 64 N.C. App. 536, 540, 307 S.E.2d 846, 849 (1983) (citation and internal quotation marks omitted). Similarly, a break in the continuity of a crime allegedly committed under duress is fatal to the defense because it is evident that the defendant had a reasonable opportunity to avoid the act without risking death or serious harm. Id. (citation omitted).
Defendant again supports his argument with Miller . However, Miller 's brief discussion of duress is dicta because the Miller defendant's sole argument on appeal was that "the trial court erred by refusing to instruct the jury on the defense of necessity[.]" Miller , --- N.C. App at ----, 812 S.E.2d at 694. Nonetheless the Miller court noted that "were we to conduct our analysis applying the elements of duress," there was substantial evidence of the elements of duress. Id. at ----, 812 S.E.2d at 705 (emphasis added).
Again, we emphasize that the facts before the Court in Miller are distinguishable from the case at bar. In Miller , the defendant briefly drove on a highway, for about three blocks, while intoxicated and a witness testified that defendant had no reasonable opportunity to avoid this act so that he could flee to escape undue exposure to death or serious bodily harm. Id. In contrast, here, defendant drove much further and there was no evidence of a present, imminent or impending pursuit, except for a witness' testimony that defendant stated he was being pursued. Such a fear was not reasonable given the complete lack of evidence that Mr. Harvey followed him. Also relevant, as there was no evidence of a pursuit, is that there was a reasonable opportunity for defendant to seek assistance to avoid his erratic driving, which endangered the lives of the drivers around him, and ultimately took the victim's life. See Smarr , 146 N.C. App. at 55, 551 S.E.2d at 888.
Therefore, the trial court did not err when it failed to instruct the jury on duress. Because the trial court did not err, defendant cannot establish plain error.
C. Ineffective Assistance of Counsel
Defendant maintains that he received ineffective assistance of counsel because his counsel failed to request instructions on the defenses of necessity and duress. However, because we have held the trial judge had no duty to instruct on necessity or duress, we conclude defendant's argument that he was denied the effective assistance of counsel is without merit. See Henderson , 64 N.C. App. at 539, 307 S.E.2d at 848 ("If the trial judge had no duty to instruct the jury on duress or coercion as a justification for his participation in the crime, the defendant was not denied the effective assistance of his counsel who failed to request such an instruction.").
D. Sentencing
In his final argument on appeal, defendant argues his prior record level was incorrectly calculated because the trial court erred by: (1) counting multiple prior convictions that defendant was convicted of in a single session of superior court; (2) counting the 10 January 2013 offense of hit and run resulting in property damage, a misdemeanor traffic offense under Chapter 20 of the General Statutes, and three Class 2 or 3 misdemeanors; and (3) considering two convictions for possession of drug paraphernalia from 2010 and 2013.
"Determining a defendant's prior record involves a ... calculation of rules and statutory applications. This calculation is a mixed question of law and fact. The 'fact' is the fact of the conviction ... and the law is the proper application of the law to the fact of a defendant's criminal record." State v. Mullinax , 180 N.C. App. 439, 441, 637 S.E.2d 294, 296 (2006) (citation, internal quotation marks, and alteration omitted). The findings of fact are conclusive on appeal if supported by competent evidence, and the conclusions of law are reviewable de novo . Id. at 442, 637 S.E.2d at 296.
Generally, "[t]he prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions[.]" N.C. Gen. Stat. § 15A-1340.14(a) (2017). Here, the trial court sentenced defendant as a prior record level VI with 20 prior record level points, based on 17 prior convictions.
Defendant first argues this total is incorrect because the trial court impermissibly counted multiple prior convictions that defendant was convicted of in a single session of superior court. Indeed, under our statutes, "if an offender is convicted of more than one offense in a single superior court during one calendar week, only the conviction for the offense with the highest point total is used" to determine the prior record level. N.C. Gen. Stat. § 15A-1340.14(d). Similarly, "[i]f an offender is convicted of more than one offense in a single session of district court, only one of the convictions is used." Id.
In accordance with this statutory guidance, defendant maintains the trial court erred when it counted multiple convictions from superior court in Halifax County that occurred on 17 October 2006. The State concedes this error, and we agree. The trial court should have only considered the conviction with the highest valuation from 17 October 2006 for the purpose of calculating prior record level, which, here, is the Class H felony. As a result, 4 points were erroneously added to defendant's prior record level points total. Without these points, defendant would have been sentenced as a prior record level V.
Next, defendant argues, and the State concedes, the trial court erred by counting the 10 January 2013 offense of hit and run resulting in property damage, a misdemeanor traffic offense under Chapter 20 of the General Statutes to determine his prior record level. We agree. Pursuant to N.C. Gen. Stat. § 15A-1340.14(b)(5), each misdemeanor conviction is worth one point. Id . However, for purposes of this subsection, a misdemeanor is: "any Class A1 and Class 1 nontraffic misdemeanor offense, impaired driving ( G.S. 20-138.1 ), impaired driving in a commercial vehicle ( G.S. 20-138.2 ), and misdemeanor death by vehicle ( G.S. 20-141.4(a2) ), but not any other misdemeanor traffic offense under Chapter 20 of the General Statutes." Id. Therefore, because hit and run resulting in property damage is a misdemeanor traffic offense that is not included in N.C. Gen. Stat. § 15A-1340.14(b)(5), the trial court erred by using this conviction to determine defendant's prior record level. See e.g. State v. Flint , 199 N.C. App. 709, 728, 682 S.E.2d 443, 454 (2009).
Last, defendant argues the trial court erred by considering two convictions for possession of drug paraphernalia from 2010 and 2013. We disagree.
In the years defendant was convicted for possession of drug paraphernalia, there was only one classification for possession of drug paraphernalia, Class 1 misdemeanor. See N.C. Gen. Stat. § 90-113.22 (2012). In 2014, our General Assembly split possession of drug paraphernalia into two offenses. See 2014 Sess. Law 119, § 3. The first offense, possession of marijuana paraphernalia, became a Class 3 misdemeanor, N.C. Gen. Stat. § 90-113.22A, while possession of all other drug paraphernalia remained a Class 1 misdemeanor. N.C. Gen. Stat. § 90-113.22(a) ; 2014 Sess. Law 119, § 3.
Although defendant's convictions for possession of drug paraphernalia occurred before the classification of these offenses was changed in 2014, the classification of a prior offense used to determine prior record level "is the classification assigned to that offense at the time the offense for which the offender is being sentenced is committed." N.C. Gen. Stat. § 15A-1340.14(c). Therefore, defendant argues that the trial court erred because it did not determine whether, as a matter of law, defendant's possession of drug paraphernalia convictions should be properly characterized as a violation of N.C. Gen. Stat. § 90-113.22A or N.C. Gen. Stat. § 90-113.22(a), which determines whether the offenses are considered a Class 1 or a Class 3 misdemeanor for the purposes of calculating a prior record level. Significantly, if the 2010 and 2013 possession of drug paraphernalia offenses are Class 3 misdemeanors, they cannot be counted for felony sentencing purposes, as the trial court did in this instance. See N.C. Gen. Stat. § 15A-1340.14(b)(5).
Our Supreme Court recently considered the issue of prior convictions with amended and/or revised statutes in State v. Arrington , --- N.C. ----, 819 S.E.2d 329 (2018). In Arrington , the defendant stipulated to a 1994 conviction for second degree murder as a Class B1 offense for the purpose of calculating his prior record level. Although second degree murder was a Class B1 felony in 1994, at the time of the conviction being sentenced, the General Assembly had amended the statute, dividing the offense into two classes: B1 and B2. Our Supreme Court held that by stipulating that the offense was a B1 for the purpose of calculating his prior record level, he stipulated that the facts giving rise to the conviction fell within the statutory definition of a B1 classification. Id. at ----, 819 S.E.2d at 333.
In the instant case, defendant stipulated that his 2010 and 2013 convictions for possession of drug paraphernalia were Class 1 misdemeanors for the purpose of calculating defendant's prior record level. Consequently, in accordance with Arrington , defendant necessarily stipulated to "the factual basis and legal application to the facts underlying the conviction" and "that the facts underlying his conviction justify that classification."Id. Therefore, the trial court did not err by counting defendant's 2010 and 2013 convictions for possession of drug paraphernalia as Class 1 misdemeanors for the purpose of calculating his prior record level.
In sum, the trial court erred in counting the A1 misdemeanor and Class I convictions from 17 October 2006, and the 10 January 2013 offense of hit and run resulting in property damage in its calculations to determine defendant's prior record level. Without these convictions, defendant has 15 prior record level points and should have been a prior record level V for sentencing purposes. N.C. Gen. Stat. § 15A-1340.14(c)(5). Therefore, we remand for resentencing in accordance with this opinion.
III. Conclusion
For the forgoing reasons, the trial court did not err by denying defendant's motion to dismiss or plainly err by failing to instruct the jury on necessity or duress, and the defendant did not receive ineffective assistance of counsel. However, we remand for resentencing in accordance with this opinion.
NO ERROR IN TRIAL; REMANDED FOR RESENTENCING.
Report per Rule 30(e).
Judges DILLON and MURPHY concur.