NEWBY, Justice.
**519 This case addresses whether, as part of a plea agreement, a defendant can stipulate on his sentencing worksheet that a second-degree murder conviction justified a B1 classification. A defendant may properly stipulate to prior convictions. Defendant here stipulated to the sentencing worksheet showing his prior offenses, one of which was a second-degree murder conviction designated as a B1 offense. In so stipulating, defendant acknowledged that the factual basis of his conviction involved general second-degree murder (a B1 classification) and did not implicate the exception for less culpable conduct involving an inherently dangerous act or omission or a drug overdose (a B2 classification). Nevertheless, a majority at the Court of Appeals held that the stipulation to this type of second-degree murder was an improper legal stipulation. Because defendant properly stipulated to the facts underlying his conviction and the conviction itself, comparable to his stipulating to his other offenses on the worksheet, the decision of the Court of Appeals is reversed.
On 14 September 2015, defendant entered into a plea agreement, which required him to plead guilty to assault with a deadly weapon **520 inflicting serious injury, felony failure to appear, and having attained habitual felon status. Under the plea agreement, which defendant read and signed, the State consolidated the felony failure to appear charge into the assault with a deadly weapon charge, dismissed a second count of attaining habitual felon status, and allowed defendant to be sentenced in the mitigated range. On the sentencing worksheet, defendant stipulated to multiple previous offenses, including breaking and entering and larceny, possession of drug paraphernalia, assault on a female, driving while impaired, and breaking and entering a motor vehicle, in addition to second-degree murder. As a part of the plea agreement, defendant also stipulated that his 1994 second-degree murder conviction was accurately designated as a B1 offense.
At defendant's sentencing hearing, the court read defendant's plea agreement, which, as noted above, defendant had read and signed:
*331 The Court: The prosecutor, your attorney and you have informed the Court that the following includes all the terms and conditions of your plea, and I will read the plea arrangement to you now.
The defendant stipulates that he has 16 points and is a Level V for habitual felon sentencing purposes. The state agrees that 14 CRS 267 will be consolidated for sentencing purposes into 13 CRS 63727. The defendant will be sentenced as an habitual felon in the mitigated range and the state will dismiss the charge of obtaining the status of habitual felon in 15 CRS 624.
So does that include all the terms and conditions of your plea?
The Defendant: Yes, sir.
Soon thereafter, the following exchange occurred:
[Prosecutor]: ... would the defendant stipulate to a factual basis and allow the state to summarize?
[Defense Counsel]: We will so stipulate.
[Prosecutor]: And would he also stipulate to the contents of the sentencing worksheet that was prepared for habitual sentencing purposes showing him to be a Level V for- **521 [Defense Counsel]: We will stipulate to the sentencing sheet.
Defense counsel then conceded, "There's nothing I can deny about Mr. [Arrington's] record, absolutely nothing." The State later referenced defendant's prior second-degree murder conviction, noting that "[defendant] killed a nine-year-old child, shot a nine-year-old child to death. ... He ended up pleading guilty to second-degree murder ...." Defendant did not attempt to explain further the facts of the second-degree murder conviction. After hearing from both parties, the judge determined that defendant had attained habitual felon status and sentenced him in the mitigated range, as agreed.
A divided panel of the Court of Appeals vacated the trial court's judgment and set aside defendant's guilty plea, holding that defendant improperly stipulated to a matter of "pure legal interpretation." State v. Arrington , --- N.C. App. ----, ----, 803 S.E.2d 845, 849 (2017). The Court of Appeals reasoned that, because the legislature divided second-degree murder into two classifications after the date of defendant's second-degree murder offense, determining the appropriate classification of the offense would be a legal question that is thus inappropriate as the subject of a stipulation between the parties. Id. at ----, 803 S.E.2d at 848. The Court of Appeals opined that the analysis required here paralleled comparing elements of an out-of-state offense to the corresponding elements of a North Carolina offense, which this Court has determined to be an improper subject of a stipulation. Id. at ----, 803 S.E.2d at 849 (citing State v. Sanders , 367 N.C. 716, 766 S.E.2d 331 (2014) ).
The dissent argued that defendant's stipulation to the second-degree murder conviction listed on his sentencing worksheet did not constitute an improper stipulation of law. Id. at ----, 803 S.E.2d at 852 (Berger, J., dissenting). The dissent asserted that, while the trial court must make the legal determination of defendant's prior record level, a defendant may stipulate to the existence of prior convictions and their classifications, which is what defendant did here. Id. at ----, 803 S.E.2d at 852. Thus, the dissent would have affirmed the trial court's judgment. Id. at ----, 803 S.E.2d at 852-53. The State filed notice of appeal based on the dissenting opinion.
Every criminal conviction involves facts (i.e., what actually occurred) and the application of the law to the facts, thus making the conviction a mixed question of fact and law. In a jury trial the judge instructs jurors on the law, and the jury finds the facts and applies the law. Similarly, in a guilty plea trial counsel summarizes the facts, **522 and the judge determines whether the facts support a conviction of the pending charge. Consequently, when a defendant stipulates to a prior conviction on a worksheet, the defendant is admitting that certain past conduct constituted a stated criminal offense. It is well settled that a defendant can stipulate to a prior conviction, even though the prior conviction itself involved a mixed question of fact and law. While the statutory classification of this prior conviction is a legal determination, its classification is fact driven. Relying *332 on a defendant's past criminal history, the trial court determines the range of sentence.
Here the crime of second-degree murder has two potential classifications, B1 and B2, depending on the facts of the murder. By stipulating that the former conviction of second-degree murder was a B1 offense, defendant properly stipulated that the facts giving rise to the conviction fell within the statutory definition of a B1 classification. Like defendant's stipulation to every other offense listed in the worksheet, defendant's stipulation to second-degree murder showed that he stipulated to the facts underlying the conviction and that the conviction existed. While defendant does not challenge the other stipulations as improper, he contends he could not legally stipulate that his prior second-degree murder conviction constituted a B1 felony.
"The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court ... finds to have been proved in accordance with this section." N.C.G.S. § 15A-1340.14(a) (2017). "The State bears the burden of proving, by a preponderance of the evidence, that a prior conviction exists and that the offender before the court is the same person as the offender named in the prior conviction." Id. § 15A-1340.14(f) (2017). The State may prove a prior conviction exists by (1) "[s]tipulation of the parties"; (2) "[a]n original or copy of the court record of the prior conviction"; (3) "[a] copy of records maintained by the Department of Public Safety, the Division of Motor Vehicles, or of the Administrative Office of the Courts"; or (4) "[a]ny other method found by the court to be reliable." Id . After the trial court determines the total number of prior record points a defendant has accumulated, the court utilizes N.C.G.S. § 15A-1340.14(c) to establish the prior record level based on the total record points the defendant has accrued.
Before 2012 all second-degree murders were classified at the same level for sentencing purposes. See Act of June 28, 2012, ch. 165, sec. 1, 2011 N.C. Sess. Laws (Reg. Sess. 2012) 781, 782. In the 2012 amendments, however, the legislature assigned culpability to convicted offenders depending upon the nature of their conduct at the time of the homicide **523 resulting in their second-degree murder convictions and the intent with which they acted at that time. See also ch. 165, pmbl., 2011 N.C. Sess. Laws (Reg. Sess. 2012) at 781. The version of the statute applicable here states:
(b) ... Any person who commits second degree murder shall be punished as a Class B1 felon, except that a person who commits second degree murder shall be punished as a Class B2 felon in either of the following circumstances:
(1) The malice necessary to prove second degree murder is based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.
(2) The murder is one that was proximately caused by the unlawful distribution of [controlled substances], and the ingestion of such substance caused the death of the user.
N.C.G.S. § 14-17(b)(1)-(2) (2015) (emphasis and brackets added).
While the second-degree murder classifications changed, second-degree murder remained a single offense with the same elements and definition. Second-degree murder is defined as "(1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." State v. Coble , 351 N.C. 448, 449, 527 S.E.2d 45, 47 (2000) (citations omitted). Malice may be shown in at least three different ways: (1) actual malice, meaning "hatred, ill-will or spite"; (2) an inherently dangerous act "done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; or (3) " 'that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification.' " State v. Reynolds , 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (quoting State v. Foust , 258 N.C. 453, 458, 128 S.E.2d 889, 893 (1963) ).
*333 Given the consistent definition of second-degree murder and the 2012 amendments to N.C.G.S. § 14-17, the text of the statute indicates the legislature's intent to elevate second-degree murder to a B1 offense, except in the two limited factual scenarios when the second-degree murder stems from either an inherently dangerous act or omission or a drug **524 overdose. See id. § 14-17(b) ("Any person who commits second degree murder shall be punished as a Class B1 felon, except that a person who commits second degree murder shall be punished as a Class B2 felon ...." (emphasis added) ); see also State v. Lail , --- N.C. App. ----, ----, 795 S.E.2d 401, 408 (2016) ("The plain language of [ N.C.G.S. § 14-17 ] ... indicates clearly that the legislature intended to increase the sentence for second-degree murder to Class B1 and to retain Class B2 punishment only where either statutorily defined situation exists."), disc. rev. denied , 369 N.C. 524, 796 S.E.2d 927 (2017). Thus, the legislature distinguishes between second-degree murders that involve an intent to harm (actual malice or the intent to take a life without justification) versus the less culpable ones that involve recklessness (an inherently dangerous act or omission) or a drug overdose. Generally, a second-degree murder conviction is a B1 offense, see N.C.G.S. § 14-17(b), which receives nine sentencing points, see id. § 15A-1340.14(b)(1a) (2017). The exception arises when it is shown that the facts of the murder meet one of the statutory exceptions, thereby making the murder a B2 offense, which receives six points for sentencing purposes. See id . § 15A-1340.14(b)(2) (2017).
It is undisputed that the State may prove a prior offense through stipulation of the parties. See id. § 15A-1340.14(f). This proof by stipulation necessarily includes the factual basis and legal application to the facts underlying the conviction. Once a defendant makes this stipulation, the trial court then makes a legal determination by reviewing the proper classification of an offense so as to calculate the points assigned to that prior offense. Thus, like a stipulation to any other conviction, when a defendant stipulates to the existence of a prior second-degree murder offense in tandem with its classification as either a B1 or B2 offense, he is stipulating that the facts underlying his conviction justify that classification.
Here defendant could properly stipulate to the facts surrounding his offense by either recounting the facts at the hearing or by stipulating to a general second-degree murder conviction that has a B1 classification. Either method of stipulating would allow the trial judge to determine the proper classification of the offense, calculate the total number of points assigned to defendant's prior convictions, and designate defendant's appropriate offender level. By stipulating to the worksheet, defendant simply agreed that the facts underlying his second-degree murder conviction, of which he was well aware, fell within the general B1 category because the offense did not involve either of the two factual exceptions recognized for the B2 classification. See id. § 14-17 ; see also **525 N.C.P.I.-Crim. 206.30A (June 2014) (instructing the jury to determine, as a question of fact, whether malice exists, including the types of malice that dictate whether conduct is a B1 offense). Defendant's factual stipulation then allowed the trial judge to properly classify the offense as B1.
The pertinent facts underlying defendant's second-degree murder conviction are helpful in understanding why he would stipulate that his conviction fell within the standard second-degree murder category. This Court in State v. Pickens , 335 N.C. 717, 440 S.E.2d 552 (1994), thoroughly recounted the facts leading to defendant's plea to second-degree murder.[1] In 1991 a jury originally convicted defendant of first-degree murder based on the felony murder rule. The murder arose from a lengthy, heated, and volatile situation. Defendant assaulted his then-girlfriend, Robinson, who called the police and subsequently obtained an arrest warrant. Id. at 718-19, 440 S.E.2d at 553. Thereafter, defendant returned to Robinson's apartment and again assaulted her. Id. at 719, 440 S.E.2d at 553.
*334 At that point, a fight broke out between defendant and Cannady, a man helping move defendant's items out of the apartment, and both men were injured. Id. at 719, 440 S.E.2d at 553. Robinson, Cannady, and several others fled to a relative's apartment in the same complex. Id. at 719, 440 S.E.2d at 553. The State presented evidence that defendant and his half-brother, Pickens, were both armed and pursued the others. Once the others were inside the second apartment, Robinson looked out a window and saw defendant. Thereafter, two shots came through the window, one of which struck and killed Robinson's young daughter. Id. at 719, 440 S.E.2d at 553.
Defendant and Pickens were jointly tried for the murder. Id. at 718, 440 S.E.2d at 552-53. Neither defendant nor Pickens contended that the incident resulted from a random shooting, but they instead accused each other of firing the fatal shot. Id. at 724, 440 S.E.2d at 556. After defendant was convicted of first-degree murder, this Court granted him a new trial upon concluding that the charges against him were erroneously joined with charges against the other defendant. See id. at 728-29, 440 S.E.2d at 559. On remand, defendant pled guilty to second-degree murder based on the same facts. These relevant facts, of which defendant was intimately aware, indicate that his conduct fell within the usual **526 B1 second-degree murder classification and do not support either of the limited factual exceptions recognized in the B2 classification.[2]
Moreover, taking into account the customarily fast pace of a plea sentencing hearing, a common sense reading of the exchange between the parties at trial shows that defendant's stipulation was to the nature of his conduct, which met the requirements of the B1 classification for second-degree murder not covered by the B2 exceptions. Stipulations of prior convictions, including the facts underlying a prior offense and the identity of the prior offense itself, are routine; for instance, defendant here stipulated to numerous other prior convictions and does not contend that those stipulations are improper. Nothing suggests the trial court did not accept defendant's stipulation here to likewise be a standard one that was, as a matter of course, linked to the facts surrounding his second-degree murder conviction.
Because defendant, the person most familiar with the facts surrounding his offense, stipulated to the factual basis for his 1994 second-degree murder conviction, this Court need not require a trial court to pursue further inquiry or make defendant recount the facts during the hearing. See Sanders v. Ellington , 77 N.C. 255, 256 (1877) ("When the parties to an action agree upon a matter of fact, they are bound by it, and it is not the duty of the judge to interfere, for he is presumed to be ignorant of the facts. When the parties agree upon a matter of law, they are not bound by it, and it is the duty of the judge to interfere and correct the mistake, if there be one, as to the law, for he is presumed to know the law ...."). It is presumed that defense counsel knew the law and advised defendant about the listed offenses when reviewing the plea agreement before defendant accepted the agreement. See Turner v. Powell , 93 N.C. 341, 343 (1885) ("It is presumed that [counsel] knew the law and advised his client correctly ...."). Further, it is evident that the trial court was satisfied to exercise its authority to accept the parties' stipulation regarding prior offenses as a part of the court's acceptance of the plea arrangement. If the trial court had concern about the nature of the second-degree murder stipulation in light of the date of conviction, the court would have inquired further.
Our analysis here is consistent with that of the Court of Appeals in State v. Wingate , 213 N.C. App. 419, 713 S.E.2d 188 (2011), in which that **527 court upheld a stipulation to a particular classification of a crime arising under a statute having two possible classifications. The defendant in Wingate stipulated to a sentencing worksheet stating he had previously been convicted of one count of conspiracy to sell or deliver cocaine and two counts of selling or delivering cocaine, all of *335 which were designated on the worksheet as Class G felonies. Id. at 420, 713 S.E.2d at 189. Though prohibited under the same criminal statute, selling cocaine constitutes a Class G felony and delivering cocaine constitutes a Class H felony. On appeal the defendant argued that his stipulation to the Class G classification constituted an improper stipulation of law. Id . at 420, 713 S.E.2d at 189-90. The Court of Appeals rejected the defendant's argument, holding that "the class of felony for which defendant was previously convicted was a question of fact, to which defendant could stipulate." Id . at 420, 713 S.E.2d at 190. In doing so, the Court of Appeals recognized that the defendant stipulated to a question of fact: that he was convicted of the offense under a theory of selling cocaine. Id . at 421, 713 S.E.2d at 190. Just as the classifications in Wingate involved a question of fact to which the defendant could properly stipulate, defendant here could properly stipulate that the facts underlying his second-degree murder conviction justified its classification as a B1 offense.
In sum, defendant's stipulation here is properly understood to be a stipulation to the facts of his prior offense and that those facts supported its B1 classification. The trial court duly accepted the stipulation. Therefore, the decision of the Court of Appeals vacating the trial court's judgment and setting aside defendant's plea agreement is reversed, and the Court of Appeals is instructed to reinstate the judgment of the trial court.
REVERSED.

The complete name of this case is State of North Carolina v. Charles L. Pickens, Jr., and James Edward Arrington . Pickens and defendant were jointly tried for the murder, and they are half-brothers.

Whether Robinson's daughter was the intended target is irrelevant because the malice with which defendant acted "follows the bullet." See State v. Wynn , 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971) (quoting 40 Am. Jur. 2d Homicide § 11, at 303 (1968) ).