HAMPSON, Judge.
 

 *725
 

 Factual and Procedural Background
 

 Keith Allen Salter (Defendant) appeals from (1) his conviction for Misdemeanor Stalking and (2) an Order finding him in criminal contempt. The evidence presented at trial tends to show the following:
 

 On 1 March 2016, Defendant was charged with one count of Misdemeanor Stalking. On 1 April 2016, Forsyth County District Court found Defendant guilty of this offense and entered a suspended sentence. On 5 April 2016, Defendant gave Notice of Appeal to Forsyth County Superior Court, requesting a jury trial.
 

 Defendant was tried
 
 de novo
 
 on the Misdemeanor Stalking charge during the 7 August 2017 Criminal Session of Forsyth County Superior Court. Defendant represented himself
 
 *805
 

 pro se
 
 and did not testify. Throughout the trial, the trial court warned Defendant that he would be held to the same standards as an attorney, given he represented himself
 
 pro se
 
 . On 8 August 2017, the trial court reviewed the closing argument procedures for the next day with Defendant and the State, and the following exchange occurred:
 

 THE COURT: Okay. All right. Let me talk about the closing arguments. ...
 

 This will be very important, Mr. Salter, directed mainly to you because you are also the defendant who will be making the closing argument.
 

 THE DEFENDANT: Yes.
 

 THE COURT: You may not -- you chose not to testify. You may not testify, then, through your closing argument. That means you cannot tell the jury, "Here's what I say happened." You can make an argument as to what the evidence showed happened, but you may not testify as you're making that closing argument; does that make sense?
 

 THE DEFENDANT: Yes.
 

 *726
 
 ....
 

 THE COURT: So when you are -- I will tell the jury very clearly that you may argue, you may characterize the evidence and attempt to persuade them to a particular verdict, but it would be improper for either side to become abusive, to inject personal experience, to express a personal belief as to the guilt or innocence of the defendant.
 

 Mr. Salter, that makes it tricky for you because you're now not acting as the defendant, you're making a closing argument as a lawyer. So you may argue what the evidence indicates, but again, you may not testify as to what -- to anything outside of what has actually been heard on this witness stand; does that make sense?
 

 THE DEFENDANT: Yes.
 

 THE COURT: Do you understand what I'm saying?
 

 THE DEFENDANT: Yes.
 

 THE COURT: I'm telling you this so that you may prepare your arguments tomorrow. I do not want you to get up here and then me send the jury out and tell you "I'm not going to let you argue that," and you have no idea what you're going to say then. So I'm trying to give you a chance to prepare tonight so that you're able to make an argument tomorrow.
 

 You may, however, give your analysis of the evidence and argue any position or conclusion with respect to any matter at issue.
 

 All right. Do you have any questions, Mr. Salter, about what would be allowed in a closing argument or not allowed.
 

 THE DEFENDANT: No, ma'am. Evidence is allowed, correct?
 

 THE COURT: Anything that has been put into evidence you may refer to, or anything that has been testified to from the witness stand that was admitted into evidence, okay?
 

 Now, something I sustained an objection to, that means it was not admitted into evidence and you cannot argue that; does that make sense?
 

 *727
 
 THE DEFENDANT: Yes.
 

 THE COURT: Any other questions that you wish to ask me about what you will and will not be allowed to argue?
 

 THE DEFENDANT: No, ma'am.
 

 Despite these explicit instructions, Defendant began his closing argument the following day by stating, "Every time you guys left out and went back into that room, I wasn't given an opportunity to present evidence. You haven't seen all the evidence. Every piece of evidence that had, I have on file, is on file but inadmissible." The trial court interrupted Defendant, excused the jury, and gave the following admonishment:
 

 THE COURT: Mr. Salter, I was very clear with you yesterday, that you were not to talk about anything that was not in evidence. You may not then tell the jury that there are things that you didn't get to put in. That is completely improper. If I have to stop you for doing that kind of thing again, I will assume you have nothing left to say to the jury, and we will stop right there.
 

 You may argue -- and I took my time to be very clear so that you could prepare. You may argue anything that is in evidence,
 
 *806
 
 what you believe your contention is, but what you may not argue is what took place in this courtroom when the jury was not present; do you understand?
 

 THE DEFENDANT: I understand.
 

 After the jury returned, Defendant again attempted to discuss matters not in evidence, such as his lack of a history of domestic violence, his personal background as a father of three children, and his educational background. The trial court excused the jury for a second time and gave Defendant a final warning.
 

 THE COURT: I will note the jury is outside the presence of the courtroom. Mr. Salter, my patience is wearing thin because I went over this with you repeatedly yesterday. You decided not the [sic] testify, and I indicated to you that you may not testify about things outside of the record in front of the jury. The next time -- listen to me carefully -- that I tell you, I will hold you in contempt, and I will begin contempt proceedings; do you understand me?
 

 THE DEFENDANT: Yes.
 

 *728
 
 THE COURT: I have indicated to you repeatedly you may not get up and say things outside of the record. You did not testify, so you may not say what your background or what your education is. That's not in record. You may not argue that that letter you didn't write. You may argue that there -- that there may not be evidence, but if there is a letter, you did not testify. You may not avoid cross-examination by testifying in the closing argument. I have been very, very clear, and I took a lot of time yesterday to explain to you what you could not do, and you said you understood; and so far, I have sent the jury out repeatedly because you're doing exactly what I told you not to do. If you violate that again, I will begin contempt proceedings. You may argue any matter that is in the record or any matter that's in evidence. You may not avoid testifying by trying to testify in your closing argument; do you understand what I'm saying to you?
 

 THE DEFENDANT: I can testify -- I can only talk about evidence.
 

 THE COURT: You can talk about -- you may argue that -- you may argue any contention that you have regarding the evidence that was admitted yesterday; anything that was said on the stand, any lack of evidence that you believe wasn't presented, that the State has not met their burden of proof, but you may not testify about things outside of the record; do you understand that?
 

 THE DEFENDANT: Yes.
 

 Upon the jury reentering, Defendant continued his closing argument and stated, "I went to Family Dollar and tried to get the video of us standing in line. They said that is a corporate matter." The trial court
 
 sua sponte
 
 objected to and sustained its objection to this statement, as it concerned matters not in evidence. Defendant's statement served as the basis for the trial court's finding of criminal contempt.
 

 On 9 August 2017, the jury found Defendant guilty of Misdemeanor Stalking. The trial court entered Judgment on the Misdemeanor Stalking charge, imposed a sentence of 75 days imprisonment, suspended that sentence, and placed Defendant on supervised probation for 18 months. In calculating Defendant's prior record level for sentencing, Defendant stipulated both that he had a prior conviction of "No Operator's License" and that this conviction was a Class 2 Misdemeanor.
 

 *729
 
 The same day, the trial court also entered a "Direct Criminal Contempt/Summary Proceedings/Findings and Order" (Criminal Contempt Order), holding Defendant in direct criminal contempt for his testimonial statements made during his closing argument and ordering him to pay a $300.00 fine within 30 days. Specifically, the trial court made the following finding of fact in its Criminal Contempt Order:
 

 The Court finds beyond a reasonable doubt that during the proceeding the above contemnor willfully behaved in a contemptuous manner, in that the above named contemnor did repeatedly argue to jury matters outside the record and attempt to testify to the jury through his closing argument after choosing not to testify at trial. The court repeatedly told him not to do so both on 8/8/17 and on 8/9/17.
 

 *807
 
 The court warned him if he did so again contempt proceedings would begin. The defendant then stated to jury "I went to the Family Dollar and tried to get the video but corporate ...." That statement was his testimony attempt again and not in evid[ence].
 

 Appellate Jurisdiction
 

 We note at the outset Defendant's Notices of Appeal from both the Misdemeanor Stalking Judgment and Criminal Contempt Order do not comply with the requirements of Rule 4 of our Rules of Appellate Procedure. On 9 November 2018, Defendant filed a Petition for Writ of
 
 Certiorari
 
 with this Court, seeking review of the Misdemeanor Stalking Judgment and Criminal Contempt Order.
 

 Pursuant to Rule 21(a)(1) of our Appellate Rules, this Court possesses the authority to grant a petition for writ of
 
 certiorari
 
 and review an order or judgment entered by the trial court "when the right to prosecute an appeal has been lost by failure to take timely action ...." N.C.R. App. P. 21(a)(1). This Court has allowed for the issuance of a writ of
 
 certiorari
 
 despite technical defects in a notice of appeal by a
 
 pro se
 
 defendant in a variety of circumstances, especially where the State has not been misled by the mistake.
 
 See, e.g.
 
 ,
 
 State v. Springle
 
 ,
 
 244 N.C. App. 760
 
 , 763,
 
 781 S.E.2d 518
 
 , 521 (2016) ("[A] defect in a notice of appeal should not result in loss of the appeal as long as the intent to appeal can be fairly inferred from the notice and the appellee is not misled by the mistake." (citations, quotation marks, and ellipsis omitted)). Here, the State does not contend it has been misled by Defendant's faulty Notices of Appeal; therefore, in our discretion, we grant Defendant's Petition for Writ of
 
 Certiorari
 
 to review both the Misdemeanor Stalking Judgment and Criminal Contempt Order.
 

 *730
 

 Issues
 

 Defendant raises two issues on appeal. First, Defendant contends the trial court erred in sentencing Defendant as a Level II Offender based on his stipulation that he was previously convicted of a Class 2 Misdemeanor. Second, Defendant asserts the trial court erred in holding Defendant in direct criminal contempt because his statements made during closing arguments were not in willful violation of the trial court's admonishments.
 

 Analysis
 

 I. Sentencing Stipulation
 

 Defendant contends the trial court erred in sentencing Defendant as a Level II Offender based on his stipulation that he was previously convicted of a Class 2 Misdemeanor. We first note the State argues this issue is moot because Defendant could have already completed his sentence, given that over 18 months have passed since Judgment was entered.
 
 [1]
 
 However, N.C. Gen. Stat. § 15A-1451 provides, "When a defendant has given notice of appeal ... [p]robation ... is stayed." N.C. Gen. Stat. § 15A-1451(a)(4) (2017). Because Defendant's sentence of probation was automatically stayed pending appeal, we determine this issue is not moot and therefore address the merits.
 

 A misdemeanor offender's prior record level is "determined by calculating the number of the offender's prior convictions that the court finds to have been proven ...." N.C. Gen. Stat. § 15A-1340.21(a) (2017). "In determining the prior conviction level, a prior offense may be included if it is either a felony or a misdemeanor at the time the offense for which the offender is being sentenced is committed."
 

 Id.
 

 § 15A-1340.21(b). A defendant's prior convictions can be proven,
 
 inter alia
 
 , by stipulation of the parties.
 

 Id.
 

 § 15A-1340.21(c)(1).
 

 "While such convictions often effectively constitute a prior record level, a defendant is not bound by a stipulation as to any conclusion of law that is required to be made for the purpose of calculating that level."
 
 State v. Gardner
 
 ,
 
 225 N.C. App. 161
 
 , 167,
 
 736 S.E.2d 826
 
 , 830 (2013) (citations omitted). Our Supreme Court recently addressed
 
 *808
 
 whether a defendant can stipulate on his sentencing worksheet that a prior conviction justifies a certain sentencing classification or whether this is a
 
 *731
 
 conclusion of law properly left to the trial court.
 
 See
 

 State v. Arrington
 
 ,
 
 371 N.C. 518
 
 ,
 
 819 S.E.2d 329
 
 (2018).
 

 In
 
 Arrington
 
 , the defendant entered a plea agreement and stipulated to a sentencing worksheet showing his prior offenses, including a second-degree murder conviction designated as a B1 offense.
 

 Id.
 

 at 519
 
 ,
 
 819 S.E.2d at 330
 
 . The defendant's second-degree murder conviction stemmed from acts committed prior to 1994; however, the Legislature did not divide this crime into two classifications, B1 and B2, until after the defendant's 1994 conviction.
 

 Id.
 

 at 522-25
 
 ,
 
 819 S.E.2d at 332-34
 
 . Thus, the defendant's second-degree murder conviction could have been classified as a B1 or B2 offense, depending on certain factual circumstances existing at the time of the murder; however, the defendant did not explain the factual underpinnings of his conviction and merely stipulated to the B1 classification.
 

 Id.
 

 at 520-21
 
 ,
 
 819 S.E.2d at 330-31
 
 . This Court vacated the trial court's judgment and held that this determination-whether the second-degree murder conviction should be classified as a B1 or B2 offense for sentencing purposes-constituted a legal question to which the defendant could not stipulate.
 

 Id.
 

 at 521
 
 ,
 
 819 S.E.2d at 331
 
 (citation omitted).
 

 Our Supreme Court reversed this Court, reasoning that "[e]very criminal conviction involves facts (i.e., what actually occurred) and the application of the law to the facts, thus making the conviction a mixed question of fact and law."
 

 Id.
 

 "Consequently, when a defendant stipulates to a prior conviction on a worksheet, the defendant is admitting that certain past conduct constituted a stated criminal offense."
 

 Id.
 

 at 522
 
 ,
 
 819 S.E.2d at 331
 
 . "By stipulating that the former conviction of second-degree murder was a B1 offense, defendant properly stipulated that the facts giving rise to the conviction fell within the statutory definition of a B1 classification."
 

 Id.
 

 at 522
 
 ,
 
 819 S.E.2d at 332
 
 . "Thus, like a stipulation to any other conviction, when a defendant stipulates to the existence of a prior second-degree murder offense in tandem with its classification as either a B1 or B2 offense, he is stipulating that the facts underlying his conviction justify that classification."
 

 Id.
 

 at 524
 
 ,
 
 819 S.E.2d at 333
 
 . Our Supreme Court further acknowledged that "[s]tipulations of prior convictions, including the facts underlying a prior offense and the identity of the prior offense itself, are routine[,]" and that because a defendant is "the person most familiar with the facts surrounding his offense, ... this Court need not require a trial court to pursue further inquiry or make defendant recount the facts during the hearing."
 

 Id.
 

 at 526
 
 ,
 
 819 S.E.2d at 334
 
 (citation omitted).
 

 *732
 
 Here, Defendant stipulated that his "No Operator's License" conviction was classified as a Class 2 Misdemeanor. However, Defendant contends this stipulation was error because on the date of the current offense, "driving with an expired operator's license was either a Class 3 misdemeanor or an infraction," per
 
 N.C. Gen. Stat. § 20-35
 
 (a1), (a2).
 
 Compare
 

 N.C. Gen. Stat. § 20-35
 
 (a1)(1) (2015) (listing failure to obtain a license before driving a motor vehicle as a Class 3 misdemeanor),
 
 with
 

 N.C. Gen. Stat. § 20-35
 
 (a2) (2015) (listing (1) failure to carry a valid license while driving and (2) operating a motor vehicle with an expired license as infractions). However,
 
 N.C. Gen. Stat. § 20-35
 
 (a) expressly provides that unless another statute controls, "a violation of this Article is a Class 2 misdemeanor ...."
 

 Id.
 

 § 20-35(a). For instance, section 20-30 of Article 2
 
 [2]
 
 sets out a number of acts that could fall within the ambit of "No Operator's License" and would be classified as Class 2 misdemeanors.
 
 See
 

 N.C. Gen. Stat. § 20-30
 
 (1) - (5) (2015) ;
 
 see also
 

 N.C. Gen. Stat. §§ 20-32
 
 ; -34 (2015).
 

 Defendant, as "the person most familiar with the facts surrounding his offense," stipulated that his "No Operator's License" conviction was a Class 2 Misdemeanor.
 
 Arrington
 
 ,
 
 371 N.C. at 526
 
 ,
 
 819 S.E.2d at 334
 
 (citation omitted). As such, he was "stipulating
 
 *809
 
 that the facts underlying his conviction justify that classification."
 

 Id.
 

 at 524
 
 ,
 
 819 S.E.2d at 333
 
 . Further, the trial court was under no duty to "pursue further inquiry or make defendant recount the facts during the hearing."
 

 Id.
 

 at 526
 
 ,
 
 819 S.E.2d at 334
 
 (citation omitted). Therefore, under
 
 Arrington
 
 , we conclude there was no error in the trial court's sentencing calculation.
 

 II. Criminal Contempt Order
 

 A. Standard of Review
 

 In criminal contempt proceedings, our standard of review is limited to determining
 

 whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment. Findings of fact are binding on appeal if there is competent evidence to support them, even if there is evidence to the contrary. The trial court's conclusions of law drawn from the findings of fact are reviewable de novo.
 

 *733
 

 State v. Simon
 
 ,
 
 185 N.C. App. 247
 
 , 250,
 
 648 S.E.2d 853
 
 , 855 (2007) (citations and quotation marks omitted).
 

 B. Willfulness
 

 N.C. Gen. Stat. § 5A-11 provides a list of conduct that constitutes criminal contempt. N.C. Gen. Stat. § 5A-11(a)(1)-(10) (2017). The trial court did not specify which subsection applies; however, based on the trial court's oral rendering of criminal contempt, it is evident the trial court based its Criminal Contempt Order on sections 5A-11(a)(1), (2), and (3), which state that criminal contempt is
 

 [w]illful behavior committed during the sitting of a court and directly tending to interrupt its proceedings[, w]illful behavior committed during the sitting of a court in its immediate view and presence and directly tending to impair the respect due its authority[, and w]illful disobedience of, resistance to, or interference with a court's lawful process, order, directive, or instruction or its execution.
 

 Id.
 

 § 5A-11(a)(1)-(3).
 

 Direct criminal contempt occurs when the act "(1) [i]s committed within the sight or hearing of a presiding judicial official; and (2) [i]s committed in, or in immediate proximity to, the room where proceedings are being held before the court; and (3) [i]s likely to interrupt or interfere with matters then before the court." N.C. Gen. Stat. § 5A-13(a) (2017). Section 5A-14 of our General Statutes allows a judge to "summarily impose measures in response to direct criminal contempt[.]" N.C. Gen. Stat. § 5A-14(a) (2017).
 

 Defendant challenges the trial court's factual finding that he "willfully behaved in a contemptuous manner" by arguing matters outside the record and attempting to testify during his closing argument. Specifically, Defendant contends his actions were not willful within the meaning of the criminal contempt statute and willfulness must be considered in the context of Defendant's lack of legal knowledge or training.
 

 As used in the criminal contempt statute, "willfulness" means an act "done deliberately and purposefully in violation of law, and without authority, justification or excuse."
 
 State v. Chriscoe
 
 ,
 
 85 N.C. App. 155
 
 , 158,
 
 354 S.E.2d 289
 
 , 291 (1987) (citations omitted). The term implies the act is done knowingly and of stubborn purpose or resistance.
 
 McKillop v. Onslow Cty.
 
 ,
 
 139 N.C. App. 53
 
 , 61-62,
 
 532 S.E.2d 594
 
 , 600 (2000) (citations omitted). Willfulness also connotes a "bad faith disregard for
 
 *734
 
 authority and the law."
 
 Forte v. Forte
 
 ,
 
 65 N.C. App. 615
 
 , 616,
 
 309 S.E.2d 729
 
 , 730 (1983) (citations omitted).
 

 Here, the Record shows the trial court repeatedly instructed Defendant that he could not testify to matters outside the record during his closing arguments, given that Defendant chose not to testify at trial. On 8 August 2017, the trial court reviewed the closing argument procedures for the following day with Defendant and stressed to Defendant that he could not testify during his closing argument, explaining "[t]hat means you cannot tell the jury, 'Here's what I say happened.' " Defendant stated he understood the trial court's instruction five separate times during the course of the instructions.
 

 However, the next day, Defendant began his closing argument by attempting to tell the jury about evidence he acknowledged was
 
 *810
 
 "inadmissible." Upon hearing Defendant attempting to testify during his closing argument, the trial court excused the jury and admonished Defendant "not to talk about anything that was not in evidence." After the trial court explained to Defendant what he could and could not discuss, Defendant told the trial court he understood its instructions.
 

 Once the jury returned, however, Defendant again attempted to discuss matters not in evidence. With the trial court's patience "wearing thin," the trial court excused the jury for a second time and gave Defendant a final warning. The trial court stressed it would not allow Defendant to "avoid cross-examination by testifying in the closing argument" and warned Defendant if he attempted to testify to matters outside of the record, the trial court would begin criminal contempt proceedings. Once again, Defendant informed the trial court he understood its warnings.
 

 Thereafter, the jury returned, and Defendant continued his closing argument by stating, "I went to Family Dollar and tried to get the video of us standing in line. They said that is a corporate matter." This statement by Defendant concerned matters not in evidence and served as the basis for the trial court's finding of criminal contempt.
 

 The transcript of Defendant's closing argument constitutes competent evidence to support the trial court's finding that Defendant acted willfully in repeatedly violating the trial court's instructions. Although Defendant claims the evidence suggests his testimony was the product of ignorance rather than willfulness, we are bound by the trial court's finding of fact.
 
 See
 

 Simon
 
 ,
 
 185 N.C. App. at 250
 
 ,
 
 648 S.E.2d at 855
 
 ("Findings of fact are binding on appeal if there is competent evidence to support them,
 
 even if there is evidence to the contrary
 
 ." (emphasis added)
 

 *735
 
 (citation and quotation marks omitted)). Therefore, the trial court's conclusion of law that Defendant was "in [direct criminal] contempt of court" is likewise supported by this finding of fact that Defendant repeatedly argued matters outside the record during closing argument, despite the trial court's repeated instructions and admonishments over a two day period. Consequently, we affirm the Criminal Contempt Order.
 

 Conclusion
 

 Accordingly, for the foregoing reasons, we conclude there was no error in the trial court's Misdemeanor Stalking Judgment. We also affirm the trial court's Criminal Contempt Order.
 

 NO ERROR IN PART; AFFIRMED IN PART.
 

 Judges ZACHARY and BERGER concur.
 

 [1]
 

 The State concedes it "has been unable to determine whether defendant has completed his sentence of 18 months of supervised probation."
 

 [2]
 

 Article 2 of Chapter 20 of our General Statutes is the Uniform Driver's License Act.
 
 See
 

 N.C. Gen. Stat. § 20-5
 
 (2017).