IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-846

No. COA20-839

Filed 20 December 2022

Wake County, No. 17 CRS 220095

STATE OF NORTH CAROLINA

v.

AUSBAN MONROE, III, Defendant.

Appeal by Defendant from judgment entered 29 January 2020 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 20 October 2021.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Steven Armstrong, for the State.*

> *Michael E. Casterline for Defendant-Appellant.*

JACKSON, Judge.

¶ 1 Defendant Ausban Monroe, III, ("Defendant") appeals from his conviction for second-degree murder. For the reasons detailed below, we hold that the trial court did not err.

**I. Background**

¶ 2 Early in the morning on 15 October 2017, Lazarus Hohn attended a house party on New Market Way in Raleigh, North Carolina, with several friends. Relatively soon after arriving at the party, Mr. Hohn and two of his friends, Khalid

Al-Najjar and Jamie Reyes, became involved in an altercation with another individual, Victor Benitez, outside the front of the house. Mr. Benitez ended up on the ground. After the fight was over, Mr. Hohn, Mr. Al-Najjar, and Mr. Reyes walked to the complex's parking lot to leave. As they approached their car, Defendant and one of his friends entered the parking lot on foot. Mr. Benitez had informed Defendant, who was attending the same house party, about the altercation in front of the home and that he felt that it had been an unfair fight. Defendant, already heavily intoxicated at that point, decided to seek out Mr. Hohn, Mr. Al-Najjar, and Mr. Reyes to confront them. Once in the parking lot, Defendant pulled out a gun and began pointing it between the three friends, asking who had fought Mr. Benitez. Defendant had purchased the gun on the street, and testimony at trial revealed that it had been stolen from the original owner's home. Defendant testified that he purchased the gun and kept it on him for protection.

Mr. Hohn stepped forward in response to Defendant's question and answered that he had been the one to fight Mr. Benitez. Defendant then pointed the gun at Mr. Hohn, and Mr. Hohn attempted to hit the gun away from him. Defendant and Mr. Hohn started fighting, while Mr. Reyes started fighting with the other individual who had accompanied Defendant to the parking lot. Mr. Al-Najjar testified at trial that he attempted to grab the gun from Defendant during the fight and that it was "going everywhere." As Defendant and Mr. Hohn were fighting, the gun that Defendant was

holding fired, and Mr. Hohn fell to the ground, having been shot in the chest. Mr. Al-Najjar threw Defendant to the ground and grabbed the gun. He then discarded the gun and applied pressure to Mr. Hohn's wound with his shirt. Defendant and his friend left the scene.

¶ 4     Paramedics arrived and determined that Mr. Hohn had a single gunshot wound and did not have a pulse or other signs of life. Mr. Hohn was transported to Wake County Medical Center and was pronounced dead shortly after arriving.

¶ 5     Defendant was arrested and, on 6 November 2017, was indicted on one count of first-degree murder. Defendant was tried by jury at the 21 January 2020 Criminal Session of Wake County Superior Court. At the close of the evidence, the trial court instructed the jury on first-degree murder, second-degree murder, and involuntary manslaughter.

¶ 6     With respect to second-degree murder, the trial court instructed the jury that, if they found Defendant guilty of second-degree murder, they should indicate on the verdict form which theory or theories of malice they found. The verdict form itself listed three theories of malice: (1) malice meaning hatred, ill will, or spite; (2) malice defined as condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict serious bodily harm which proximately results in another's death; and (3) malice that arises when an act which is inherently dangerous to human life is intentionally done so recklessly and wantonly as to

manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.

¶ 7    During deliberations, the jury asked for clarification on malice and second-degree murder. The trial court repeated its prior second-degree murder instructions.

¶ 8    On 29 January 2020, the jury returned a verdict finding Defendant guilty of second-degree murder. The jury answered "yes" on the form as to whether they found each of the three theories of malice, finding all three present. The trial court sentenced Defendant for second-degree murder as a Class B1 to a minimum of 240 months to a maximum of 300 months active incarceration. Defendant objected to the B1 classification, contending that a B2 classification was appropriate.

¶ 9    Defendant orally noticed appeal.

## II.    Analysis

¶ 10    Defendant argues on appeal that he is entitled to be resentenced as a Class B2 felon because N.C. Gen. Stat. § 14-17(b) is ambiguous as to how a defendant should be sentenced when the jury finds that the evidence supports multiple theories of malice that do not all carry the same sentence.

### A. Standard of Review

¶ 11    "The standard of review relating to the sentence imposed by the trial court is whether the sentence is supported by evidence introduced at the trial and sentencing hearing." *State v. Fortney*, 201 N.C. App. 662, 669, 687 S.E.2d 518, 524 (2010). "We

review *de novo* whether the sentence imposed was authorized by the jury's verdict." *State v. Lail*, 251 N.C. App. 463, 471, 795 S.E.2d 401, 408 (2016).

**B. Rule of Lenity**

Defendant contends that he is entitled to the application of the rule of lenity, and therefore that he should be sentenced as Class B2 rather than Class B1 for his second-degree murder conviction. We disagree.

"The rule of lenity forbids a court to interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *State v. Conley*, 374 N.C. 209, 212, 839 S.E.2d 805, 807 (2020) (internal quotations omitted). This rule is only applicable to ambiguous criminal statutes. *State v. Cates*, 154 N.C. App. 737, 740, 573 S.E.2d 208, 210 (2002).

For example, in *State v. Smith*, our Supreme Court held that a statute which prohibited the dissemination of "any obscene writing, picture, record or other representation or embodiment of the obscene" was ambiguous. 323 N.C. 439, 444, 373 S.E.2d 435, 438 (1988). Because the use of the word "any" could be reasonably construed as referring to either a single item or multiple items, the Court applied the rule of lenity and held that the defendant could only be convicted of one violation of that statute, even where there were multiple items seized. *Id.*

Similarly, in *Conley*, our Supreme Court held that the prohibition contained in N.C. Gen. Stat. § 14-269.2(b) on the possession or carrying of "any gun, rifle, pistol,

or other firearm" on educational property was ambiguous and prohibited conviction for multiple violations where the defendant had several firearms in his possession on school grounds. *Conley*, 374 N.C. at 214, 839 S.E.2d at 808.

¶ 16 "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Div. of Soc. Servs. & Div. of Med. Assistance, N.C. Dep't of Health and Human Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006). The statute at issue here is our sentencing scheme for second-degree murder, specifically N.C. Gen. Stat. § 14-17(b).

¶ 17 "Second-degree murder is defined as (1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *State v. Arrington*, 371 N.C. 518, 523, 819 S.E.2d 329, 332 (2018). North Carolina recognizes three forms of malice: (1) "actual malice, meaning hatred, ill-will or spite"; (2) "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification"; and (3) "an inherently dangerous act done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief." *Id.* (internal citations and quotations omitted). The third theory of malice is often referred to as "depraved heart" malice. *Lail*, 251 N.C. App. at 464, 795 S.E.2d at 404.

¶ 18 North Carolina General Statute § 14-17 was amended in 2012, and, in relevant

part, currently reads:

> (b)     A murder other than described in subsection (a) or
> (a1) of this section or in G.S. 14-23.2 shall be deemed
> second degree murder.  Any person who commits second
> degree murder shall be punished as a Class B1 felon,
> except that a person who commits second degree murder
> shall be punished as a Class B2 felon in either of the
> following circumstances:
>
> (1)     The malice *necessary* to prove second degree murder
> is based on an inherently dangerous act or omission, done
> in such a reckless and wanton manner as to manifest a
> mind utterly without regard for human life and social duty
> and deliberately bent on mischief.
>
>  . . . .

(emphasis added).

¶ 19          Defendant contends that this statute is ambiguous as to how a trial court

should sentence a defendant that is found guilty of second-degree murder under

multiple theories of malice, and therefore the rule of lenity prohibits the trial court

from sentencing him at the higher Class B1 range.  We disagree.

¶ 20          The key term contained in N.C. Gen. Stat. § 14-17(b) is that for a defendant to

be entitled to sentencing as a Class B2, the malice *necessary* to prove second-degree

murder must be "based on an inherently dangerous act or omission, done in such a

reckless and wanton manner as to manifest a mind utterly without regard for human

life and social duty and deliberately bent on mischief[]," i.e. depraved heart malice.

The word "necessary" has a plain and routinely used meaning in our law.  According

to Black's Law Dictionary, it means "needed for some purpose or reason; essential." *Necessary*, Black's Law Dictionary (11th ed. 2019). A "necessary element" of an offense is one that is required to support a conviction. *See State v. Ledwell*, 171 N.C. App. 328, 329, 614 S.E.2d 412, 413 (2005). A "necessary witness" is one whose testimony is "relevant, material, and *unobtainable by other means*." *See State v. Smith*, 230 N.C. App. 387, 391, 749 S.E.2d 507, 510 (2013) (emphasis added) (discussing Rule 3.7(a) of the North Carolina Rules of Professional conduct).

¶ 21 We hold that the language of N.C. Gen. Stat. § 14-17(b) is clear and without ambiguity. It is apparent from the statute that a defendant is only entitled to be sentenced as a Class B2 if the malice that is essential or required for the defendant to be convicted of second-degree murder is depraved heart malice. If the jury finds that the evidence supports either, or both, of the other two forms of malice in addition to depraved heart malice, then a finding of depraved heart malice is not necessary to convict the defendant of second-degree murder, and he is not entitled to sentencing as a Class B2 and will instead be sentenced as a Class B1.

¶ 22 Here, a finding of depraved heart malice was not necessary or essential for the jury to convict Defendant of second-degree murder. Defendant concedes that the jury verdict itself was not ambiguous and does not challenge its finding of all three theories of malice beyond a reasonable doubt. A second-degree murder conviction predicated on a malice theory other than depraved heart malice is sentenced as a

Class B1.  The jury not only found that the evidence supported depraved heart malice, but that it also supported the other two theories of malice.  If the jury had found that the evidence did not support depraved heart malice, Defendant still would have been convicted of second-degree murder under the other two theories.  A finding of depraved heart malice was therefore not necessary to his conviction and Defendant was appropriately sentenced as a Class B1 felon.

¶ 23        Defendant relies on our prior decision in *State v. Mosley*, 256 N.C. App. 148, 806 S.E.2d 365 (2017), for his contention that the jury's verdict finding all three forms of malice present in his case requires a sentence in the Class B2 range.  *Mosley* is inapplicable under the circumstances of this case.

¶ 24        In *Mosley*, we found that where there was evidence presented at trial that would have supported a second-degree murder conviction on more than one theory of malice, and because those theories of malice carry different sentences, the jury's general finding of unspecified malice was ambiguous.  *Id.* at 153, 806 S.E.2d at 369.  The trial court had provided the jury with a general verdict form that did not specify which potential forms of malice the jury could find.  *Id.* at 149, 806 S.E.2d at 367.  When the jury returned a guilty verdict for second-degree murder, the trial court had no way of knowing under which theory of malice that verdict resulted from, and therefore was unable to properly sentence the defendant.  *Id.* at 153, 806 S.E.2d at 369.  We recommended that:

> In order to avoid such ambiguity in the future, we recommend two actions. First, the second degree murder instructions contained as a lesser included offense in N.C.P.I.—Crim. 206.13 should be expanded to explain all the theories of malice that can support a verdict of second degree murder, as set forth in N.C.P.I.—Crim. 206.30A. Secondly, when there is evidence to support more than one theory of malice for second degree murder, the trial court should present a special verdict form that requires the jury to specify the theory of malice found to support a second degree murder conviction.

*Id.*

The trial court in this case did provide the jury with instructions that explained all three theories of malice, in addition to providing a verdict form that required the jury to specify the theory of malice that they found supported a second-degree murder conviction. Further, Defendant does not challenge the jury verdict here as ambiguous. Therefore, the issues we identified in *Mosley* were not present in this case.

We note that this Court recently decided a similar issue where the jury was presented with, and selected, all three categories of malice on the verdict form for second-degree murder in *State v. Borum*, 274 N.C. App. 249, 849 S.E.2d 367 (2020). However, our Supreme Court granted a petition for discretionary review and petition for writ of supersedeas in *Borum*, in addition to a temporary stay. *State v. Borum*, 867 S.E.2d 667 (N.C. 2022). *Borum* is still pending at our Supreme Court and therefore it is not controlling on our decision here. *See State v. Hutchens*, 272 N.C.

App. 156, 161, 846 S.E.2d 306, 311 (2020).

¶ 27      We hold that N.C. Gen. Stat. § 14-17(b) is not ambiguous, and therefore Defendant is not entitled to the application of the rule of lenity. The statute is clear that only where a finding of depraved heart malice is necessary to the conviction of second-degree murder will a defendant be entitled to sentencing as a Class B2 felon. Because the jury here explicitly found that the evidence supported other theories of malice in addition to depraved heart malice, Defendant was properly sentenced as a Class B1 felon.

## III.     Conclusion

¶ 28      For the aforementioned reasons, we hold that the trial court did not err in sentencing Defendant as a Class B1 felon.

NO ERROR.

Judge CARPENTER concurs.

Judge HAMPSON concurs in result only.